30094. PERREN, *alias* HICKS, *v.* THE STATE.

DECIDED MAY 14, 1943.

*C. G. Battle*, for plaintiff in error.

*John A. Boykin, solicitor-general, Durwood T. Pye, J. R. Parham*, contra.

GARDNER, J. The defendant was convicted of unlawfully shooting at another. His motion for new trial was overruled and he excepted.

■ While the evidence in some particulars was conflicting, there was ample evidence to sustain the verdict, which has the approval of the trial judge. Special grounds 1 and 2 are but amplifications of the general grounds. The general grounds and special grounds 1 and 2 are without merit.

■ Ground 3 complains of error because the court admitted in evidence two pistols, one a revolver and the other an automatic 45-calibre army pistol. Very soon after the shooting an officer went to the home of defendant, arrested him and secured the two pistols. Immediately thereafter the arresting officer delivered the custody of the defendant and the two pistols to another police officer. The arresting officer stated, in the presence of the defendant, that the pistols had been obtained at the defendant's home at the time of the arrest, and the defendant admitted that they were his pistols. On the trial the arresting officer was not sworn. When the pistols were offered in evidence counsel for defendant objected to their introduction on the grounds: (a) That the evidence did not show that either of the pistols had been used in the alleged shooting; and (b) that the witness officer, to whose custody the prisoner and the pistols had been delivered, did not know anything concerning the pistols except what the arresting officer had told him, and therefore the testimony of the witness was hearsay, inadmissible, and prejudicial. One of the pistols was of a bright color, the other of a dark color. One witness who testified as to the shooting described the pistol used by the defendant as a bright pistol, another described it as a dark pistol. The defendant in his statement admitted shooting, but stated that he "shot down." Even if the pistols were inadmissible in evidence, as the defendant contends (which we do not concede), we can not see how their introduction was prejudicial to defendant, even under his own statement. In this ground defendant makes the following contention: "Movant contends that it was only shown that the pistols were the property of defendant by his alleged admission of such ownership." Under all the facts of this case there is no merit in this ground for either of the reasons assigned. See *Love* v. *State,* ante, 411 (25 S. E. 2d, 827).

■ Ground 4 complains of the following charge of the court: "Now, gentlemen, when witnesses appear and testify they are presumed to speak the truth, and are to be believed unless they are impeached in some manner provided by law or unless they are other-

wise discredited in some manner in your opinion and in your judgment. One of the ways a witness may be impeached is by disproving the facts to which he has testified, and one of the methods known to the law for impeaching a witness is to offer evidence of a conviction of a crime involving moral turpitude. When a witness is thus sought to be impeached, the jurors then become the triors of the credibility of the witness whose testimony is thus sought to be impeached, and you are to weigh all the opposing testimony and all the facts and circumstances and all the evidence that may be produced to you on the subject and at last say whether you will discredit the testimony of the witness, or whether you will give credit entirely to the effort made to impeach the witness. In a word, it is the exclusive province of the jury, under all the attending circumstances and conditions, to determine whether a witness has or has not been successfully impeached, but where his unworthiness of credit is absolutely established in the minds of the jury, he ought not to be believed and it is the duty of the jury to disregard his testimony entirely unless it is in some manner corroborated, in which case you may believe the witness, it being a matter of course always for the jury to determine whether a witness has or has not been successfully impeached, and if so impeached whether or not he has been corroborated."

Error is assigned on this charge, (a) because the only method of attack to impeach two of the State's witnesses (one the real prosecutor) was by introducing the records of previous convictions of robbery and assault with intent to murder, wherein the witnesses were sentenced to terms of five to ten years; (b) there was no testimony introduced by the State to disprove the records of such convictions, nor to corroborate the testimony of the witnesses given in the case; (c) because the court did not instruct the jury as to what constituted "moral turpitude;" (d) because the court should have instructed the jury, "that moral turpitude as referred to in the impeachment of witnesses was, when applied to an offense against the criminal laws, 'any offense punishable by the laws of this State with imprisonment in the penitentiary for a period of two years or more,' and 'that if such evidence had been introduced as to show the witnesses's conviction and sentence of two years or more in the penitentiary, unless the testimony of the witness was corroborated by other competent evidence, it would be their duty to disregard the entire testimony of such witness or witnesses.' "

Generally, while not in the same sequence or words, this charge in substance and principle (with the exception of the question of the attack with reference to the term "moral turpitude" which we will deal with later) has been approved as correct by this court and the Supreme Court in a number of decisions. See *Nipper* v. *Minix*, 50 *Ga. App.* 51 (176 S. E. 890): "1. 'It being the exclusive province of the jury to determine the credibility of all witnesses, when an effort is made by any of the methods pointed out by law to impeach a witness, the jury then become the triors of the credibility, respectively, of the witness sought to be impeached, and of the witness or witnesses by whose testimony the impeachment is attempted; and, accordingly, they have the right, under all the attendant circumstances and conditions, to determine whether credit shall be given to the witness whose credibility has been attacked, or to the witness or witnesses by whose testimony such attack is made, and thereupon decide whether the witness has or has not been impeached.'

"(a) 'When a witness has been successfully impeached by any of the legal methods, that is, where his unworthiness of credit is absolutely established in the minds of the jury, he ought not to be believed, and it is the duty of the jury to disregard his entire testimony, unless it is corroborated, in which case [the jury] may believe the witness; it being, as a matter of course always for the jury to determine whether a witness has been in fact so impeached.'

"2. The evidence authorized the verdict, no error of law is shown, and the court properly overruled the motion for a new trial." See cases cited in that opinion. As to exceptions designated (a), (b), (c), and (d) to the charge, we will deal with them in their order. (a) It is true that the defendant introduced proceedings, without objection, wherein it was shown that two of the State's witnesses had been previously convicted of felony; but the record also reveals that the defendant went further than this, both in his statement and the introduction of witnesses, in an effort to disprove the facts testified to by the witnesses for the State. Certainly the defendant can not contend that the court erred in the charge in stating to the jury that a State's witness may be impeached by disproving facts testified to by him. From the record this was one of the very earnest means which the defendant was using to attack the State's witnesses. There is no merit in this contention.

(*b*) It is true that the State introduced no testimony to contradict the records of the convictions of the State's witnesses, but we disagree with the contention that there was no corroborating testimony. Indeed a careful reading of the record indicates, aside from the testimony of the witnesses sought to be impeached, that the aliunde testimony submitted by the State was sufficient to sustain the verdict.

(*c*) We think that the term "moral turpitude" is of such obvious significance that it was not incumbent on the judge, in the absence of a written request, to omit to define it. The Supreme Court held in *Battle* v. *State,* 103 *Ga.* 53 (2) (29 S. E. 491). "There was no error in failing to define 'reasonable doubt' in connection with the charge that the jury must be satisfied to a reasonable and moral certainty of the guilt of the accused." See *Elder* v. *State,* 143 *Ga.* 383 (85 S. E. 197), to this effect: "The words 'reasonable doubt' are of such obvious significance that, in the absence of an appropriate written request, an omission to define them will not require a new trial." As to other technical terms and phrases, see *Holmes* v. *Clisby,* 121 *Ga.* 241 (7) (48 S. E. 934); *Savannah Electric Co.* v. *Bennett,* 130 *Ga.* 597 (3) (61 S. E. 529); *Pickens* v. *State,* 132 *Ga.* 46 (63 S. E. 783); *Carver* v. *State,* 14 *Ga. App.* 267 (3), 268 (80 S. E. 508); *Hembree* v. *State,* 17 *Ga. App.* 117 (2) (86 S. E. 286); *Weldon* v. *State,* 21 *Ga. App.* 330 (94 S. E. 326); *Bailey* v. *State,* 30 *Ga. App.* 18 (2) (116 S. E. 548).

(*d*) What we say here is peculiarly applicable to the contention of defendant as set forth above under this particular exception, and also applicable to the other exceptions to the charge, some of which are dealt with above. In *Andrews* v. *State,* 118 *Ga.* 1 (3) (43 S. E. 852), the court held: "A witness can not be impeached by introducing a record of his conviction for misdemeanor, it not appearing that the offense for which he was found guilty was one involving moral turpitude." It therefore follows that the contention of the defendant as to what the judge should have charged is not a sound principle of law. Moral turpitude does not necessarily involve a felony conviction. It must be remembered that in this case the defendant introduced the records. The court admitted them without objection. It must therefore be conceded that the convictions involved moral turpitude else they would not have been

admitted. It stands to reason that not only did the jury understand the meaning of the term "moral turpitude," but the trial court in admitting the records is presumed to have admitted only such convictions as did involve moral turpitude. The further contention that the court should have charged the jury that if the witnesses had been previously convicted of offenses involving moral turpitude the witnesses would thus be impeached and their testimony should be disregarded unless corroborated, is not a sound principle of law. The previous conviction of a witness of a crime involving moral turpitude goes to his credit as a witness, but does not ipso facto, when proved, impeach the witness to such an extent that before a conviction will be sustained on his testimony alone such testimony must be corroborated. If the jury believed such witness, regardless of his previous conviction of such a crime, his testimony alone, uncorroborated, may be sufficient to sustain a conviction.

In *Slone* v. *State,* 118 *Ga.* 705 (6) (45 S. E. 630, 98 Am. St. R. 145), the court held: "By statute neither bad character nor conviction of crime renders a witness incompetent; but his credibility is for the jury, who may found a verdict on the sole testimony of such witness, except in those cases where the Code expressly requires corroboration." Justice Lamar, in speaking for the court, had this to say on this principle (page 714): "That a witness is an accomplice, or a participant in a related offense, or a perjurer on the trial of a different case as to the same subject-matter, or is of bad character, goes to his credibility. Such facts are, of course, matter for argument and careful consideration by the jury. No doubt they scan with anxious deliberation evidence coming from such sources. But one previously perjured may tell the truth in the case then on trial; and if, after rigid cross-examination, hearing all the testimony and listening to the statement of the defendant himself, the jury are satisfied that the testimony of such witness is true,—if it is consistent, probable, and bears the stamp of truth—they may accept it and act on it, and this court can not disregard their finding, nor say that the evidence was insufficient to warrant the verdict." In this connection we wish to call attention to one more decision of the Supreme Court on the question before us, *Davis* v. *State,* 94 *Ga.* 399 (19 S. E. 243), in which the court said: "Although the verdict can be supported only upon the testimony of

a single witness who was confessedly guilty of a crime involving moral turpitude, and there was evidence tending to show he had made contradictory statements and that his general character was bad, yet the jury having nevertheless believed the witness, and his testimony being sufficient if true to authorize a conviction, there was no abuse of discretion in denying a new trial. Evidently the jury did not believe the witness was effectually impeached, or they would not have convicted upon his testimony alone."

In view of these decisions and of the facts in the instant case, the charge was more favorable to the defendant. The jury was authorized to return a verdict against the defendant on the testimony of the State's witness alone, or that of a witness who had been convicted of a crime involving moral turpitude. But as above observed, if corroborating testimony was needed to sustain that of the two witnesses attacked, the record abundantly reveals it. The judge did not err in overruling the motion.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*