A04A0028, A04A0029. KEOGLER et al. v. KRASNOFF et al.; and vice versa.
(601 SE2d 788)

MIKELL, Judge.
After a jury returned a verdict in favor of Robert M. Krasnoff in this securities fraud action, the trial court entered a judgment for Krasnoff, Barbara C. Krasnoff, and the Krasnoff Family Irrevocable Trust (collectively referred to herein as the "Krasnoffs"). In Case No. A04A0028, Linda G. Keogler and Helen M. Keogler appeal the judgment, arguing that the trial court's charge to the jury was

erroneous. In Case No. A04A0029, the Krasnoffs cross-appeal, challenging the trial court's denial of their motions for directed verdict. We affirm the judgment in Case No. A04A0028 and dismiss Case No. A04A0029 as moot.

The record shows that this litigation arose out of the failure of SGE Mortgage Funding Company ("SGE"), a mortgage company based in Tifton. SGE was founded in approximately 1987 by defendant Steven Cason, who served as its CEO and president throughout the company's existence.[1] SGE operated by obtaining private funds from individuals, then loaning these funds to homeowners. The loans from the private investors were secured by mortgages on the homeowners' property. The private investors had the option to handle the paperwork associated with the loans. But if asked, SGE would handle the paperwork, collect payments from homeowners, and make payments to the investors.

The written loan agreements provided the terms of the loan, including the length of the loan and the interest rate, and listed the homeowners to whom SGE would loan the funds and the homeowners' addresses. The investor had the option to accept or reject the listed collateral, to service the loan, and to retain the right to foreclose if the homeowners failed to pay their mortgages.

Krasnoff was SGE's largest investor.[2] During the 1990s, Krasnoff made dozens of loans to SGE. Krasnoff testified that several of his family members invested in SGE and that his attorney, Wes Warren, who had represented him for many years also invested in SGE. When the company failed, Krasnoff lost over $2 million.

In early 1997, Charles M. Cushing, Jr., the Keoglers' attorney, introduced William Keogler[3] to Krasnoff. Cushing testified that Krasnoff had told him previously that SGE had an excellent track record; that its investors made money; that it was a good investment; and that he was a principal of the company and operated the financial side of the business. Further, Krasnoff explained that the "security package" offered to investors included five documents: (1) an underlying promissory note from a borrower to SGE; (2) a recorded deed to secure debt; (3) a fully executed assignment in recordable form; (4) a title insurance policy insuring that the deed to secure debt was in first position; and (5) an appraisal confirming that the value of the

---

[1] Cason is not a party to this appeal. Cason pled guilty to several criminal charges and was sentenced to ten years in federal prison.

[2] The documents in the record from the Georgia Secretary of State's Office indicate that Krasnoff became SGE's CFO in April 1998. Helen Keogler testified that Krasnoff told her in May 1997 that he was SGE's CFO.

[3] William Keogler is appellant Linda Keogler's husband and appellant Helen Keogler's son.

property exceeded the outstanding debt.

Keogler, an experienced investor, had recently sold his own successful brokerage business, after working for several large brokerages, and was looking for an investment for the profits from the sale. In April 1997, Keogler convinced his wife, Linda Keogler, to loan SGE $257,634.14, which was to be secured by three pieces of property that were identified in the loan agreement. The Keoglers did not request SGE's financial statements to verify alleged representations of Krasnoff regarding SGE's track record and did not check the title on the property securing the loan. After the loan was executed, Cushing repeatedly requested the loan documents from SGE's offices in Tifton. Although they never received the documents, the Keoglers loaned over $500,000 in additional funds to SGE.

In January 1998, many of SGE's checks to its investors were returned for insufficient funds. SGE immediately reissued the checks, and Cason told Krasnoff that the problem had been caused by a bank error, which was later confirmed by the bank. When additional problems arose during the summer of 1998, Krasnoff and two other investors, Warren and Walter Stroman, a CPA, formed a volunteer committee to determine the cause of the problems. The State Department of Banking and Finance examined SGE's books and records in May 1998.

In September 1998, Krasnoff, as owner of 40 percent of SGE's stock, forced Cason to resign. Krasnoff, Warren, and Stroman then began reviewing SGE's books and discovered that the company was insolvent. On the following day, Krasnoff filed a petition to place SGE into receivership, which became a bankruptcy proceeding in the United States Bankruptcy Court. As of September 1998, several of SGE's employees had pled guilty to federal charges of concealing Cason's conduct.

On December 16, 1998, the Keoglers filed this action against Cason and the Krasnoffs, alleging securities fraud, common law fraud, fraudulent conveyance, conspiracy and bad faith. During the jury trial, the Keoglers moved for a directed verdict against Cason, which the court granted in its entirety. The court entered a judgment in favor of the Keoglers against Cason. Linda Keogler was awarded $500,634.14 in principal and $207,730.82 in pre-judgment interest. Helen Keogler was awarded $350,000 in principal and $145,226.03 in pre-judgment interest. Both plaintiffs were also awarded post-judgment interest of 12 percent per annum and were jointly awarded attorney fees of $150,000. As for the Keoglers' claims against Krasnoff, the jury returned a verdict for Krasnoff. The Keoglers appeal the judgment entered on the verdict.

## Case No. A04A0028

1. The Keoglers argue that the trial court committed reversible error by charging the jury as follows:

> Ladies and Gentlemen, I charge you that in order for the plaintiffs to recover on their claim of securities fraud, the plaintiff must prove each of the following essential elements by a preponderance of the evidence: A misstatement or omission of a material fact made with scienter on which each plaintiff relied that proximately caused his or her injury. The legal term scienter has the following definition, that the false statement was knowingly made with a false design or was made in a severely reckless manner. Severe reckless-ness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even an excusable negligence, but an extreme departure from the standards of ordinary care. To show justifiable reliance on the misrepresented or omitted information sufficient to constitute securities fraud, the plaintiffs must show that with the exercise of reasonable diligence they still could not have discovered the truth behind the fraudulent misrepre-sentation or omission.

When the jury asked the court to define the difference between common law fraud and securities fraud, the court charged that "[s]ecurities fraud occurs when there is a form of fraud in the context of a securities transaction. Common law fraud may occur under any circumstances if you find that it has occurred. So the distinction for your purposes is: Securities fraud relates to a securities transaction, and common law fraud relates to any circumstances." Appellants assert that both of these charges were erroneous because they charged actual fraud, rather than securities fraud, by inserting the element of scienter. Because scienter is an element of securities fraud, we disagree.

Appellants maintain that the securities fraud statutes, OCGA §§ 10-5-12 (a) (2)[4] and 10-5-14 (a),[5] do not include "scienter" as an

---

[4] OCGA § 10-5-12 (a) (2) provides that
[i]t shall be unlawful for any person . . . [i]n connection with an offer to sell, sale, offer to purchase, or purchase of any security, directly or indirectly: (A) To employ a device, scheme, or artifice to defraud; (B) To make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (C) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person.

[5] OCGA § 10-5-14 (a) provides a private remedy for violations of OCGA § 10-5-12 (a).

element. However, the charge to which they object was taken virtually verbatim from *GCA Strategic Investment Fund v. Joseph Charles & Assoc.*[6] In that case, a purchaser who bought 2,000 shares of stock in a corporation three weeks before the corporation declared bankruptcy sued the seller and broker, alleging securities fraud and common law fraud, among other things. We held that "[t]o evaluate a claim of securities fraud under OCGA § 10-5-12 (a), we look to the similar elements a plaintiff must allege under section 10 (b) of the Securities Act of 1934: 1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury."[7] We cited *William Goldberg & Co. v. Cohen*[8] for the proposition that common law and securities fraud require the same elements,[9] and *Bryant v. Avado Brands*[10] which lists the elements under Rule 10b-5. Accordingly, in light of *GCA Strategic Investment Fund*[11] and the cases cited therein, we reject plaintiff's argument that scienter is not an element of securities fraud. Therefore, the trial court's charge was not erroneous.

Appellants also briefly argue that they were not required to show that they justifiably relied on Krasnoff's alleged misrepresentations. Again, appellants are incorrect. "Justified reliance is an essential element of any fraud claim."[12]

2. In their second enumeration of error, the Keoglers argue that the trial court erred by failing to charge that the reckless representation of facts as true without knowledge is actionable as a species of fraud without scienter. There was no error. Though the court refused to give the requested charge,[13] it did charge that "fraudulent or reckless misrepresentation of facts as true, which the party may know to be false, if intended to deceive, is equivalent to knowledge of the falsehood."[14] "[I]t is a fundamental rule in Georgia that jury

---

[6] 245 Ga. App. 460 (537 SE2d 677) (2000).

[7] (Punctuation and footnotes omitted.) Id. at 464 (3), citing 17 CFR § 240.10b-5 (1992) ("Rule 10b-5").

[8] 219 Ga. App. 628 (466 SE2d 872) (1995).

[9] Id. at 636 (6).

[10] 187 F3d 1271, 1281 (11th Cir. 1999).

[11] Supra.

[12] (Citation omitted.) *William Goldberg & Co.*, supra at 637 (6) (a) (the absence of justifiable reliance supported the grant of summary judgment on the plaintiffs' common law and securities fraud claims).

[13] The court concluded that the charge was not adjusted to the evidence because the theory advanced during the trial was that Krasnoff and Cason intentionally lied about events and SGE's financial status, not that they were reckless, and that the charge was confusing.

[14] The court's charge is taken from the pattern jury instruction on misrepresentation and concealment in fraud and deceit actions. See Suggested Pattern Jury Instructions, Vol. I: Civil Cases (3d ed. 1991), Part XIV (D), p. 130.

instructions must be read and considered as a whole in determining whether the charge contained error."[15] The Krasnoffs maintain that the proposed charge was an incorrect statement of law because it obviated the necessity to prove that the party making the alleged reckless misrepresentation intended to deceive the party relying thereon. Under the circumstances of this case, we agree with the Krasnoffs and affirm.

In *Ernst & Ernst v. Hochfelder*,[16] the United States Supreme Court addressed the question of whether an action can exist under section 10 (b) of the Securities Act of 1934, after which OCGA § 10-5-12 (a) (2) is patterned, in the absence of an allegation of intent to deceive, manipulate, or defraud on the defendant's part.[17] The Supreme Court concluded that it could not, and in doing so, defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud."[18] As discussed in Division 1, scienter is required to sustain an action for securities fraud. And based on *Ernst & Ernst*,[19] scienter, even if based on a reckless misrepresentation, contemplates the intent to deceive. Therefore, the Keoglers' proposed charge, which essentially states that the misrepresentation of facts as true without knowledge that those facts are true, regardless of the intent to deceive, is actionable as fraud, does not apply here because it is not precisely tailored or adjusted to the evidence. "A trial court does not err in refusing to give a requested charge which is confusing, misleading, inapt, not precisely tailored or adjusted to the evidence, or not authorized by the evidence."[20]

The Keoglers maintain that the charge should have been given because it was a correct statement of law and was adjusted to the evidence that developed over the course of the trial. In support of their argument, the Keoglers cite *Aliabadi v. McCar Dev. Corp.*,[21] which quoted *Stinson v. Artistic Pools*[22] for the proposition at issue here. Though the requested language appears in *Aliabadi* and *Stinson*, those cases are distinguishable from the instant case. Both cases involve appeals from grants of summary judgment in favor of builders in homeowners' suits alleging common law fraud, not securities fraud. Moreover, in *Aliabadi*, we did not reach the appellants' argument based on the Keoglers' proposed charge because the appellants

---

[15] (Citation and punctuation omitted.) *Volkswagen of America v. Gentry*, 254 Ga. App. 888, 896 (9) (b) (564 SE2d 733) (2002).

[16] 425 U. S. 185 (96 SC 1375, 47 LE2d 668) (1976).

[17] Id. at 193.

[18] Id. at 193, n. 12.

[19] Supra.

[20] (Footnote omitted.) *Sims v. Heath*, 258 Ga. App. 681, 684-685 (4) (d) (577 SE2d 789) (2002).

[21] 249 Ga. App. 309 (547 SE2d 607) (2001).

[22] 236 Ga. App. 768 (513 SE2d 510) (1999).

in *Aliabadi* failed to raise it in the trial court. Though instructive in *Stinson*, the proposed charge was not tailored to the evidence in this case. Thus, the trial court's refusal to give the charge does not constitute error.

### Case No. A04A0029

In light of our decision in Case No. A04A0028, the Krasnoffs' cross-appeal is moot.

*Judgment affirmed in Case No. A04A0028. Appeal dismissed as moot in Case No. A04A0029. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 1, 2004 — 

*Wilson & Lakes, L. Matt Wilson, Anthony O. Lakes*, for appellants.

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, John D. Dalbey*, for appellees.