## A07A2131. HAUPT v. THE STATE.
### (660 SE2d 383)

MILLER, Judge.

Following a jury trial, Reginald C. ("Bubba") Haupt was convicted of two counts of making an untrue statement of material fact in connection with an offer for the sale of securities and five counts of omission of a material fact in connection with such an offer to sell in violation of the Georgia Securities Act of 1973 (the "Act"), OCGA § 10-5-12 (a) (1) and (2) (B), respectively. Haupt appeals, challenging the sufficiency of the indictment to allege securities fraud and the Act's applicability to the "investment contracts" at issue, the trial court's charge to the jury, the jurisdiction of the trial court for lack of venue in Chatham County, the admission of certain evidence, the sufficiency of the evidence, and the denial of his motion for new trial based upon newly discovered evidence. Discerning no error, we affirm.

---

A plain legal error standard of review is applied to a trial court's ruling on a legal question. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). The admissibility of relevant evidence is reviewed for abuse of discretion. *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902-903 (2) (517 SE2d 365) (1999). Upon review of the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). Neither do we weigh the evidence or determine witness credibility. Instead, we determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in the light most favorable to the jury's verdict, the evidence in this case shows that Haupt, once a Savannah attorney, was disbarred in October 1983 for commingling client funds with his own, failing to account for the same, and other violations of the Georgia Bar Rules. *In the Matter of Haupt*, 251 Ga. 510, 511 (307 SE2d 488) (1983). He had been suspended from the practice of law for six months with a public reprimand for the same offense a year earlier. *In the Matter of Haupt*, 250 Ga. 422, 423 (297 SE2d 284) (1982). In 1985, Haupt was convicted of four counts of felony conversion and sentenced concurrently to eight years confinement, to serve two, and the remainder probated. After his release from confinement in 1987, Haupt was convicted in Florida of grand theft in the first degree and sentenced to five years probation. In 1992, apparently after successfully completing his sentences to probation, he was unconditionally pardoned for his Georgia convictions, "without implying innocence," by the State Board of Pardons and Paroles. Haupt thereafter filed a petition for reinstatement as a member of the State Bar, but such petition was dismissed by the Supreme Court of Georgia upon the motion of the State Bar.

In the fall of 2001, Haupt decided to open a restaurant chain in his own right to be known as Crabdaddy's and to be operated by a corporation to be known as Crabdaddy's, Inc. ("Crabdaddy's" or the "new corporation"). To do so, he persuaded Karen Thompson, Thomas Richardson, Don Hodges, Marie Rodriguez and her mother, Enedina Rissman, to invest in the new corporation.

The conversations between Haupt and Thompson took place at Bell's Restaurant in Chatham County in late 2001. After learning that Thompson was a widow in financial trouble, Haupt told Thompson that he was an attorney taking only occasional cases in favor of making more money in the restaurant business; that a $10,000 investment was required to acquire 50 shares of Crabdaddy's stock, although he gave an equal number of shares in the new corporation

to at least one individual for services rendered and sold an equal number of shares to another for $15,000; and that Crabdaddy's had been incorporated when it had not. Haupt failed to disclose that he had been disbarred; that his petition for reinstatement had been dismissed; that neither he nor Crabdaddy's was registered with the Georgia Secretary of State to sell stock in Georgia; and that the Crabdaddy's stock he was selling was unregistered. Thompson purchased 50 shares of Crabdaddy's stock for $10,000 in late 2001.

Haupt approached Richardson in February 2002 at his Chatham County business office seeking a further investment in Crabdaddy's. Haupt told Richardson that 50 shares in the new corporation would cost $15,000, but failed to tell him that the other investors in Crabdaddy's were receiving the same number of shares for $10,000. Further, while Haupt told Richardson that he had been disbarred, he failed to inform him that his petition for reinstatement had been dismissed and that he was a convicted felon. Richardson purchased 50 shares of Crabdaddy's "Corporate Capital" stock for $15,000 in February 2002.

In January 2002, Haupt approached Don Hodges "within the Chatham County area" and asked if he would like to receive stock in Crabdaddy's in lieu of payment completed on a Crabdaddy's restaurant in the City of Richmond Hill in Bryan County. Hodges knew of Haupt's disbarment and that he served time in Georgia for felony theft at that time. Haupt, however, failed to inform Hodges that he had been convicted of grand theft in Florida and that he was offering stock in a corporation that had not been incorporated and for which he was not a registered agent. Hodges purchased 50 shares of Crabdaddy's "Corporate Capital" stock for $10,000 in January 2002.

Rodriguez and Rissman each purchased $10,000 shares of Crabdaddy's "corporate" stock on May 21, 2002 upon representations Haupt made to them at the Tybee Island Crabdaddy's restaurant in Chatham County. Haupt falsely led them to believe that Crabdaddy's had repurchased stock sold to earlier investors, thereby making such shares available for purchase. Haupt failed to tell them that there had been no repurchases of stock, that he and the earlier investors were in an active dispute over his ownership of Crabdaddy's stock, that such stock was not registered for sale, and that he was not registered to sell securities in Georgia. Further, Haupt failed to disclose to Rodriguez and Rissman that he was a disbarred attorney and a convicted felon.

1. Haupt contends that the trial court erred in denying his motion for new trial, arguing that (i) the indictment was defective because it was vague and ambiguous for failure to set out the specific misrepresentations or omissions alleged as in violation of the Act, and (ii) the

investment contracts by which he sold shares in Crabdaddy's were not securities within the meaning of the Act.

(a) A motion in arrest of judgment, made during the same term the judgment was entered, *not a motion for new trial*, as here, is the proper vehicle to challenge a defective indictment. *Kirkland v. State*, 282 Ga. App. 331, 334-335 (3) (638 SE2d 784) (2006), citing *Abreu v. State*, 206 Ga. App. 361, 363 (2) (425 SE2d 331) (1992). Haupt's failure to challenge the indictment below by a timely filed motion in arrest of judgment, results in waiver on appeal.[1] *Kirkland*, supra, 282 Ga. App. at 334-335 (3).

(b) Haupt's claim that the investment contracts by which he sold Crabdaddy's stock to his victims were not "securities" under the Act is also waived on appeal because he failed to preserve the issue by moving for a directed verdict of acquittal thereon. See *Rhyne v. State*, 209 Ga. App. 548, 550-551 (1) (434 SE2d 76) (1993) (Georgia criminal law does not provide for a motion for judgment notwithstanding the verdict).

2. Haupt contends that the trial court erred in failing to sua sponte charge the jury: (i) the complete statutory definition of the word "security" as set out in OCGA § 10-5-2 (a) (26), (ii) the practices violative of the Act under OCGA § 10-5-12 (d), (iii) that it must find the investment contracts at issue to involve sales of a security in order to convict, and (iv) the definition of a material misstatement or omission. We disagree.

(a) Haupt contends that the trial court erred in failing to sua sponte charge the jury the full statutory definition of a "security," arguing that the charge, as given, was harmful as a matter of law. See *Saxon v. State*, 266 Ga. App. 547, 554 (3) (597 SE2d 608) (2004) (holding that even absent a request, the trial court has a duty to charge the jury as to every substantial and vital issue in a case).

The record shows that the trial court charged the jury that the term "security" "meant any stock or share or any other instrument commonly known as a security." The foregoing charge was in consonance with the evidence, which showed that Haupt's victims had purchased shares of Crabdaddy's stock. While Haupt correctly notes that the Act defines the term "security" more broadly than simply a stock or a share, the trial court did not err in sua sponte conforming its definition of a security to the evidence before the jury. See *Hill v. State*, 259 Ga. 557, 558 (3) (b) (385 SE2d 404) (1989) ("A request to charge must be legal, apt and precisely adjusted to some principle

---

[1] Haupt filed a motion in arrest of judgment on August 11, 2006. Inasmuch as Haupt was sentenced on May 12, 2006 and the next term of the Chatham County Superior Court began on the first Monday in June 2006 (OCGA § 15-6-3 (17)), such motion was untimely filed and properly dismissed. *Kirkland*, supra, 282 Ga. App. at 334-335 (3).

involved in the case and authorized by the evidence.") (citation and punctuation omitted). Plainly, any failure by the trial court to adjust its jury charge to reflect the law and the evidence would not comport with the foregoing requirement. It follows that the trial court had no sua sponte duty to charge the full statutory definition of the term "security" as defined in the Act. *Saxon*, supra, 266 Ga. App. at 554 (3).

(b) Haupt maintains that the trial court erred in failing to sua sponte charge the jury the practices violative of the Act as set out in OCGA § 10-5-12 (d). Haupt, however, was charged with violating OCGA § 10-5-12 (a) (2) (B), which makes criminal the use of material misstatements or omissions in conjunction with the sale of securities. Inasmuch as the practices violative of OCGA § 10-5-12 (d) were thus immaterial in the State's case against Haupt, the trial court did not err in failing to sua sponte instruct the jury as to such provisions of the Act. *Saxon*, supra, 266 Ga. App. at 554 (3).

(c) Haupt contends that the trial court erred in failing to sua sponte charge the jury that to convict it had to find that the investment agreements entered into by the parties constituted sales of a "security" as that term is defined under the Act.

As noted above, the trial court charged the jury that "the term security means any stock or share or any other instrument commonly known as a security." Haupt's victims purchased their shares of Crabdaddy's stock pursuant to investment agreements denominated either as a "Crabdaddy's Stockholder's Agreement" or a "Stock Purchase Agreement." By such agreements, each of the parties purchased 50 shares of Crabdaddy's stock.

Haupt failed to request that the trial court instruct the jury that it must find that the investment agreements constituted the sale of a security under the Act. See *Stinchcomb v. State*, 280 Ga. 170, 172-173 (3) (626 SE2d 88) (2006) ("In the absence of a specific request to charge, it is not error for the trial court to not give a charge."). Further, since the agreements on their face were for the purchase of stock, the trial court's charge was properly adjusted to the evidence. *Hill*, supra, 259 Ga. at 558 (3) (b). A charge indicating that investment agreements were among the instruments qualifying as a security thus was not vital to the disposition of the case. *Saxon*, supra, 266 Ga. App. at 554 (3). Accordingly, the trial court's failure to charge the same was not error.

(d) Finally, Haupt contends that the trial court erred in not sua sponte charging the jury "what would be required to prove the nature of a material misrepresentation or omission." Where a word is of obvious significance and common understanding in an indictment, there is no need to charge the jury its definition even in the event of a request. *Perren v. State*, 69 Ga. App. 417 (3) (a) (25 SE2d 823) (1943). Haupt failed to request such a charge, and we find that what is of

"material" importance in purchasing a security, whether in the nature of misstatement or omission, is commonly understood and does not require further explanation by the trial court, whether upon a request to charge or sua sponte as vital to the jury's understanding of a significant issue in the case. *Saxon*, supra, 266 Ga. App. at 554 (3). Even were it otherwise, the State's securities expert defined material information in lay terms, i.e., "Material information is simply information that a reasonable investor would want to know in order to make an informed decision about [his or her] investment." Consequently, there is no error on this basis.

3. Haupt contends that his convictions as to Counts 1 and 2 (making an untrue material statement of fact and omitting other material facts in selling Crabdaddy's stock to Thompson), must be reversed because the State failed to prove venue in Chatham County. He also challenges his conviction as to Count 6 (omitting material facts in selling Crabdaddy's stock to Hodges) for no proof of venue in Chatham County. We disagree.

Venue for violations of OCGA § 10-5-12 (a) (2) (B) is governed by OCGA § 10-5-15, which provides: "For the purposes of venue for any civil or criminal action under [the Act], *any* violation [thereof] shall be considered to have been committed in *any* county in which any act was performed in furtherance of the transaction which violated [the Act]." (Emphasis supplied.) Thompson testified that her conversations with Haupt, as set out above, occurred at Bell's Restaurant in Chatham County. Hodges testified that Haupt sought his investment in Crabdaddy's "within the Chatham County area."

"Venue, as a jurisdictional fact, must be proven beyond a reasonable doubt. It is a question to be decided by the jury whose decision will not be set aside if there is any evidence to support it." (Punctuation and footnotes omitted.) *Moore v. State*, 246 Ga. App. 163, 165 (2) (539 SE2d 851) (2000). Inasmuch as the State unequivocally laid venue in Chatham County as to Counts 1 and 2, no error obtained on that account. Neither did the State fail to establish venue as to Count 6. While the State's evidence in this regard was not unequivocal, i.e., Hodges' testimony indicating that the offense occurred "within the Chatham County area," the evidence otherwise showed that he executed his stock purchase agreement in the "State of Georgia; County of Chatham." Because the evidence thus shows an act in Chatham County in furtherance of the commission of Count 6, venue as to it was also proved beyond a reasonable doubt. OCGA § 10-5-15.

4. Haupt contends that the trial court erred in admitting evidence of (i) the convictions for which he had been pardoned; (ii) his criminal convictions that were more than ten years old; and (iii) his disbarment and the denial of his petition for reinstatement of his

license to practice law. Haupt also complains that the trial court erred in excluding the testimony of Reverend Warren Cribb. These claims are without merit.

(a) Relying on OCGA § 24-9-84.1 (c) (2), Haupt argues that his Georgia convictions of felony theft were inadmissible because he had received a pardon for them from the State Board of Pardons and Paroles. OCGA § 24-9-84.1, however, governs the admissibility of prior convictions to impeach a witness, and insofar as it forecloses the admissibility of a conviction that has been the subject of a pardon or annulment, it does so only if such action was "based on a finding of innocence." OCGA § 24-9-84.1 (c) (2).

Here, the record shows that Haupt's pardon was granted for his good behavior "without implying innocence," and that the State offered the convictions for which he had been pardoned not for the purpose of impeachment, but as relevant to its case-in-chief as to Haupt's failure to reveal material facts in connection with the sale of securities. "As a general rule, admission of evidence is a matter resting in the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse. [Cit.]" *Bradford v. State*, 221 Ga. App. 232, 234 (2) (471 SE2d 248) (1996). Moreover, "[m]aterial evidence is not rendered inadmissible merely because it incidentally places a defendant's character in issue. [Cits.]" *Greer v. State*, 199 Ga. App. 106, 107 (1) (403 SE2d 825) (1991).

(b) Haupt claims his prior convictions were inadmissible because they were more than ten years old — this in violation of OCGA § 24-9-84.1 (b). *Hinton v. State*, 280 Ga. 811, 819 (7) (631 SE2d 365) (2006). Haupt, however, fails to support this claim of error by citation of authority or reference to the record. Accordingly, we deem it abandoned on appeal and will not consider it. Court of Appeals Rule 25 (c) (2).

(c) Haupt complains further that the trial court erred in admitting evidence of his disbarment and of the denial of his petition for reinstatement of his license to practice law. This was additional evidence relevant to the State's case-in-chief showing a material misstatement of fact as to Thompson insofar as he told her that he continued to practice law and a material omission of fact as to the other investors. Given the foregoing, the admission of such evidence was not error. *Bradford*, supra, 221 Ga. App. at 234 (2); *Greer*, supra, 199 Ga. App. at 107 (1).

(d) Haupt contends that the trial court erred in excluding the testimony of Reverend Warren Cribb, whom Haupt proffered as a character witness.

> [T]he trial court has broad discretion to exclude evidence on grounds of relevancy, which decision we will not disturb absent manifest abuse. Thus, if the proffered evidence is too tenuous to prove the desired matter and is possibly more prejudicial than probative, the trial court does not abuse its discretion in excluding the evidence.

(Footnotes omitted.) *Baker v. State*, 254 Ga. App. 19, 21 (2) (561 SE2d 185) (2002).

Here, at an out-of-court hearing, Haupt proffered that Cribb would testify that since his release from prison, Haupt had freely admitted his past to members of the Savannah community. Reverend Cribb had no personal knowledge, however, as to whether Haupt had revealed his prior bad acts to his victims. Because Reverend Cribb's testimony was plainly tenuous if not speculative as to the relevant issues in this case, we find no manifest abuse of discretion in the trial court's exclusion of such testimony. *Baker*, supra, 254 Ga. App. at 21 (2).

5. Further, Haupt challenges the sufficiency of the evidence, contending (i) as to Counts 8, 9, and 10 (omitting material facts in selling Crabdaddy's stock to Rissman and Rodriguez), that the State failed to prove such sales were subject to the Act, because the stock involved was personally held; (ii) as to Count 1 (making an untrue statement of material fact to Thompson in connection with the sale of a security), that the State failed to prove that the untrue statements were made within the period provided by the statute of limitation; (iii) as to Count 9 (making an untrue statement of material fact to Rodriguez), that the State failed to prove that the untrue statement was false at the time it was made; (iv) as to Counts 4 and 6 (omitting material facts in selling Crabdaddy's stock to Richardson and Hodges), that the State failed to prove any material omission of fact because Richardson and Hodges knew of his past before making their investments; and (v) that the State failed to prove criminal intent as to all his convictions.

(a) Haupt contends that the trial court erred in denying his motion for a new trial as to Counts 8, 9 and 10 because his sales of stock to Rissman and Rodriguez were from personally held stock not subject to the statute. The foregoing claim was not raised and ruled upon in the trial court, and, therefore, it is waived on appeal. *Frank v. State*, 257 Ga. App. 164, 166 (3) (570 SE2d 613) (2002).

(b) Haupt asserts that Count 1 (misstating a material fact to Thompson in connection with the sale of a security), cannot stand because the State failed to prove that he made untrue statements to Thompson within the period provided by the statute of limitation. We disagree.

OCGA § 17-3-1 (c) provides that "[p]rosecution for felonies . . . must be commenced within four years after the commission of the crime. . . ." The indictment against Haupt was returned by the Chatham County grand jury on December 22, 2004. In this case, therefore, offenses occurring before December 21, 2000 were barred by the statute of limitation.

Thompson invested in Crabdaddy's stock by two checks, dated November 28 and December 13, 2001. She testified that she did so based on her conversations with Haupt during the months of October and November 2001. In light of the foregoing, the evidence was sufficient to show that Haupt's violation of the Act as to his sale of securities to Thompson occurred within the period provided by the statute of limitation.

(c) Haupt contends that the evidence supporting his conviction for making an untrue statement of material fact in connection with his sale of securities to Rodriguez is insufficient because the State offered no evidence showing that such statement was untrue when made. Once more, we disagree.

Rodriguez testified that Haupt told her that she would be able to purchase Crabdaddy's stock after the company repurchased stock previously sold to other investors. Rodriguez otherwise testified that Haupt told her that such stock had become available at the time of her purchase. Haupt admitted, however, that at the time Rodriguez purchased the shares offered to her, the repurchase of stock had not yet been completed. Because the evidence showed that Haupt's representations as to the availability of stock for purchase were untrue when made, the instant claim of error is without merit.

(d) Haupt's claim that the State failed to prove the commission of Counts 4 and 6 (omitting material facts in selling Crabdaddy's stock to Richardson and Hodges), for lack of evidence showing that Richardson or Hodges relied upon any omitted statement of material fact is also without merit. "Justified reliance[, of course,] is an essential element of any fraud claim." *Keogler v. Krasnoff*, 268 Ga. App. 250, 254 (1) (601 SE2d 788) (2004). Haupt's arguments to the contrary notwithstanding, however, the evidence shows omitted statements of material fact which would authorize a rational trier of fact to find such element satisfied as to Richardson and Hodges. Specifically, Richardson testified that had he been aware of Haupt's Florida conviction and the entirety of his criminal past, he would not have invested in Crabdaddy's. In other testimony, Hodges indicated that he had invested in Crabdaddy's, in part, upon Haupt's representation that he could become an attorney again. Haupt, however, did not disclose that the Supreme Court of Georgia had dismissed his petition for reinstatement to the State Bar upon the State Bar's motion.

(e) Haupt contends that his convictions must be reversed for lack of proof of criminal intent. "Criminal intent is a question for the jury and may be inferred from conduct before, during and after the commission of the crime." (Citations omitted.) *Ward v. State*, 271 Ga. 648, 649 (1) (520 SE2d 205) (1999). The record is replete with evidence of false statements and omissions of material fact made by Haupt in connection with his sale of Crabdaddy's stock to each of his victims. The evidence supporting Haupt's convictions was therefore not insufficient on this account.

Given the foregoing, evidence was presented upon which a rational trier of fact could have found Haupt guilty beyond a reasonable doubt of the charged offenses. *Jackson*, supra, 443 U. S. at 307.

6. Haupt last contends that the trial court erred in denying his motion for new trial as to Count 1 and Count 2 (making an untrue material statement of fact and omitting other material facts in selling Crabdaddy's stock to Thompson), based upon newly discovered evidence.

> The standard for granting a new trial on the basis of newly discovered evidence is well established. It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) *that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.*

(Citations and punctuation omitted; emphasis supplied.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). All six requirements must be satisfied to secure a jury trial. *Moody v. State*, 277 Ga. 676, 682 (7) (594 SE2d 350) (2004).

In support of his extraordinary motion for new trial, Haupt filed four affidavits. Contrary to Thompson's testimony on direct examination, each of the affiants testified that Haupt had disclosed his legal difficulties to Thompson, including his disbarment, before September 1, 2001. Such testimony served only the purpose of impeachment, thus failing to satisfy the final requirement of *Timberlake*.

Citing *Fugitt v. State*, 251 Ga. 451, 453 (1) (307 SE2d 471) (1983), Haupt argues that the affidavits showed that Thompson fabricated her testimony, requiring the grant of a new trial. In *Fugitt*, however,

the Supreme Court of Georgia found fabrication upon the absolute certainty that the witness could not have met the defendant on the night of the crime because he was then incarcerated. Id. This is not such a case. Consequently, the trial court did not err in denying Haupt's extraordinary motion for new trial based upon the claim of newly discovered evidence. *Timberlake*, supra, 246 Ga. at 491 (1); *Moody*, supra, 277 Ga. at 682 (7).

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MARCH 5, 2008 —
RECONSIDERATION DENIED MARCH 27, 2008.

*Phillips & Brown, Robert P. Phillips III*, for appellant.
*Spencer Lawton, Jr., District Attorney, Arvo H. Henifin, Assistant District Attorney*, for appellee.