## A11A2068. CULVER v. THE STATE.
(724 SE2d 485)

MIKELL, Presiding Judge.

A jury convicted Darius Michael Culver of two counts of first degree forgery and two counts of theft by deception. He appeals the denial of his motion for a new trial, enumerating three errors: (1) the trial court's grant of the state's reverse *Batson*[1] motion; (2) the trial court's refusal to instruct the jury on impeachment by prior inconsistent statements and the use of prior inconsistent statements as substantive evidence; and (3) that he received ineffective assistance of counsel. We affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict."[2]

So viewed, the evidence shows that Culver entered into a contract with C. E. Hall Construction, Inc. ("Hall"), a general contractor, to serve as a subcontractor providing materials and labor for masonry work at Hall's construction project at a Savannah-area church. Hall issued two checks totaling more than $12,900 for materials and made payable, jointly, to Culver and to his materials supplier, Clarkes Block Company. Culver endorsed the checks, as did his wife, who used two different names to sign them. No one from Clarkes Block endorsed the checks. When Culver cashed the checks at a liquor store, he created the impression that Clarkes Block had given him permission to cash the checks. The store owner testified that when he asked about the second signature on one of the checks, which was in fact Culver's wife's signature, Culver told him the check was signed by a secretary at Clarkes Block. The total amount

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).
[2] (Punctuation and footnote omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

of the checks was intended to pay Clarkes Block, as Culver had been paid for his labor by separate check.

1. Culver claims the trial court erred in granting the state's reverse *Batson* challenge,[3] which resulted in the reseating of juror no. 21, a white juror, after Culver used eight of his nine peremptory strikes to remove white jurors, and the ninth to remove a juror who is Hispanic. This argument is meritless.

After three jurors were excused for cause, of the thirty-seven jurors who remained, twelve were black, two were Hispanic, and twenty-three were white. The record does not reveal the racial composition of the petit jury. In evaluating claims that the defendant used peremptory challenges in a racially discriminatory manner,

> the trial court must engage in a three-step process: first, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; second, the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; and third, the trial court decides whether the opponent of the strike has proven discriminatory intent.[4]

Although Culver argues that the state failed to make a prima facie showing of discrimination, once Culver offered a race-neutral explanation for the strike and the trial court ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the state made a prima facie showing becomes moot.[5] As a result, we need only address the issue of the sufficiency of Culver's proffered reasons for striking juror no. 21, and the ultimate issue of purposeful discrimination. "A race-neutral explanation need not be persuasive, plausible or even make sense; it must simply be based on something other than the juror's race. Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race neutral."[6]

Based on these guidelines, the trial court found that defense counsel's explanations for all the strikes were race-neutral. After defense counsel has offered race-neutral reasons for his strikes, the burden of proving that the proffered explanations are pretexts for discrimination then shifts back to the opponent of the strikes, in this

---

[3] The United States Supreme Court has held that criminal defendants, as well as the state, are subject to the restrictions placed upon jury selection in *Batson*. See *Georgia v. McCollum*, 505 U. S. 42, 59 (IV) (112 SC 2348, 120 LE2d 33) (1992).

[4] (Footnote omitted.) *Moon v. State*, 280 Ga. App. 84 (1) (633 SE2d 418) (2006).

[5] *Bass v. State*, 271 Ga. App. 228, 231 (4) (609 SE2d 386) (2005).

[6] (Punctuation and footnotes omitted.) Id.

case, the state.[7]

Culver's enumeration focuses only on the trial court's analysis related to juror no. 21. While Culver argues that the trial court improperly placed the burden of disproving pretext on the defense, the record does not support this. Defense counsel stated that he could not recall why he excluded juror no. 21 but thought it was because this juror worked in a science- and detail-oriented job, and he did not want such people on the jury in a criminal case. The state countered that the juror "stated he worked in pest control . . . and he also was a musician by trade . . . he's not a technician." The trial court then found that juror no. 21 was excluded for a pretextual reason, and reseated that juror.

A decision on this and the other *Batson* factors rests upon the trial court's assessment of defense counsel's credibility and state of mind. "[I]t therefore lies peculiarly within the trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous."[8] Further, as no transcript of voir dire was available, we cannot say that the trial court's finding of pretext and grant of the state's *Batson* motion were clearly erroneous.[9]

2. Culver contends that the trial court erred in failing to instruct the jury on impeachment by prior inconsistent statements, or on the use of prior inconsistent statements as substantive evidence. We disagree.

Culver submitted a written request to charge Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.31.40, a broad-based charge on impeachment via several different means, including prior inconsistent statements, which exhorts the court to *"charge only those that apply."*[10] Despite this, Culver's attorney agreed to the charge the court proposed at the charge conference, which included impeachment language related to, inter alia, disproving facts to which the witness testified and to credibility, but did not include language about prior inconsistent statements. The record provides no indication that Culver's counsel ever requested the charge relating to instructing the jury on the use of prior inconsistent statements as substantive evidence.[11] Culver did not object either at the charge conference or after the jury was charged to the omission of either of these jury instructions.

---

[7] Id. at 232 (4).

[8] (Citation and punctuation omitted.) *Moak v. State*, 222 Ga. App. 36, 39 (3) (473 SE2d 576) (1996).

[9] See *LeMon v. State*, 290 Ga. App. 527, 530 (1) (b) (660 SE2d 11) (2008).

[10] (Emphasis in original.)

[11] Suggested Pattern Jury Instructions, supra at § 1.31.70.

Despite the lack of objection below, the omission of these jury instructions was raised in Culver's amended motion for new trial and enumerated as error on appeal. In accordance with our Supreme Court's recent decision in *State v. Kelly*,[12] and the mandate of OCGA § 17-8-58 (b), we must review the omission to determine whether it constituted plain error, regardless of preservation below. *Kelly* sets forth a four-prong test, as follows:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[13]

"Satisfying all four prongs of this standard is difficult, as it should be."[14] Culver's argument as to both omitted charges fails because he has not satisfied either the first or second prongs of the *Kelly* test. He has not shown an error or defect from the applicable legal rule, nor has he shown that the alleged error is clear and not subject to reasonable dispute.[15] "A request to charge the jury must be legal, apt and precisely adjusted to some principle involved in the case and be authorized by the evidence."[16] Further, a trial court must adjust its jury charge to reflect the law and the evidence.[17]

The pattern jury instruction on impeachment exhorts the court to "*charge only those* [portions of the instruction] *that apply*."[18] For this instruction to apply, Culver must have at least attempted to

---

[12] 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

[13] (Punctuation omitted; emphasis in original.) Id. at 33 (2) (a), citing *Puckett v. United States*, 556 U. S. 129, 135 (II) (129 SC 1423, 173 LE2d 266) (2009).

[14] (Citation and punctuation omitted.) *Kelly*, supra.

[15] Id.

[16] (Citation and punctuation omitted.) *Hill v. State*, 259 Ga. 557, 558 (3) (b) (385 SE2d 404) (1989).

[17] *Haupt v. State*, 290 Ga. App. 616, 620 (2) (a) (660 SE2d 383) (2008).

[18] (Emphasis in original.) Suggested Pattern Jury Instructions, supra at § 1.31.40.

impeach the witness by a prior inconsistent statement.[19] To do so, counsel must

> ask the witness *whether he made the alleged statement, giving its substance*, and naming the time, the place, and the person to whom made. If the witness denies the making of the statement, or fails to admit it, then the requirement of "laying the foundation" is satisfied and [counsel], at his next stage of giving evidence, may prove the making of the alleged statement.[20]

In his appellate brief, Culver identifies the witness his counsel allegedly attempted to impeach via prior inconsistent statements as Trevor Wells, one of the owners of Clarkes Block. Culver testified that Wells gave him permission to cash one of the two-party checks, keep the money, and repay Clarkes Block the whole amount later. He testified that when he got the second two-party check, he cashed it and kept the money without talking with Wells because of their prior conversation. Wells testified as follows:

> Q: [D]id [Culver] at some point come to you about a check that he'd been issued from Hall Construction?
> A: He came to me and said he had a check. Yes, sir.
> Q: Okay. Did he ask you or indicate to you that he needed money for some purpose?
> A: He said he had a lot of labor to pay. Yes, sir.
> Q: Did he ask you to do anything in regards to that check?
> A: No, sir.
> Q: Was it your understanding, or do you recall whether or not [Culver] was going to negotiate that, the entire check, and pay Clark[es] later from his draw?
> A: I can't say. I don't remember. . . .
> Q: Okay. Is it possible that you could have given [Culver] authority to negotiate the check?
> A: No, sir.

While Wells's testimony certainly differed from Culver's, at no

---

[19] See id. at § 1.31.40 (charge applies "[i]f any attempt has been made in this case to impeach any witness by proof of contradictory statements previously made").

[20] (Citation and punctuation omitted; emphasis supplied and omitted.) *Bryant v. State*, 288 Ga. 876, 884-885 (8) (708 SE2d 362) (2011); OCGA § 24-9-83 (before a witness may be impeached by his own prior inconsistent statement, "the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible").

point did Culver's counsel ever present Wells with the substance of any alleged prior statement about giving Culver permission to cash the checks and keep the money, such that in his testimony on the stand, Wells was put in a position to deny or fail to admit any alleged prior statement.[21] As the proper foundation never was set forth for impeachment, it was not plain error for the trial court to omit either the charge on impeachment by prior inconsistent statements or the charge on the consideration of prior inconsistent statements as substantive evidence.

3. Culver alleges that his trial counsel was ineffective. The standard for determining whether a defendant was denied effective assistance of counsel is a two-part test which requires a showing that counsel's performance was deficient[22] and that but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[23] In examining an ineffectiveness claim, the court need not address both prongs of the inquiry "if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[24]

(a) Culver first asserts ineffectiveness in that his trial counsel "failed to make clear that his peremptory strike of Juror No. 21 was in no way due to racial bias."

Neither the trial record nor the transcript of the motion for a new trial, at which trial counsel testified as to Culver's ineffectiveness claims, supports this argument; nor does Culver's own appellate brief. First, as discussed in Division 1, above, the trial court found that Culver gave a race-neutral reason for striking juror no. 21, *then* found that the basis of the strike was pretextual. Also, at the start of the *Batson* hearing, counsel said, "Well, judge, I didn't count the white[s] and blacks. I went juror by juror to look at what I noted about them . . . and what their answers were in voir dire." Second, at the motion for a new trial, trial counsel testified that he did not strike juror no. 21 for any race- or gender-based reason. Finally, Culver's own appellate brief first quotes the trial court's statement at the *Batson* hearing: "the burden falls to you to give me a race neutral reason for exercising this strike" as to juror no. 21; then Culver's brief asserts that "trial counsel *had done so*."[25] This is apparently a reference to trial counsel's explanation, discussed

---

[21] *Bryant*, supra.

[22] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[23] Id. at 694 (III) (B).

[24] Id. at 697 (IV).

[25] (Emphasis supplied.)

above, that he struck juror no. 21 because he was a science- and detail-oriented person.

Unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel, though we conduct a de novo review of the trial court's legal conclusions.[26] "[A] claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight. [Culver] has simply failed to show that trial counsel's performance was deficient so as to prejudice his defense."[27]

(b) Culver further alleges trial counsel was ineffective in failing to object to the omission of a jury instruction on the use of prior inconsistent statements as substantive evidence, and in failing to object to and also agreeing when the trial court said it would omit a jury instruction on impeachment by prior inconsistent statements. Because we found in Division 2, above, that no foundation was laid for impeaching a witness by prior inconsistent statements, Culver's trial counsel cannot be ineffective for failing to object to charges that were not legally warranted. "The failure to pursue a futile objection does not amount to ineffective assistance."[28] This enumeration fails.

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED MARCH 1, 2012 — 

*Steven L. Sparger*, for appellant.
*Larry Chisolm, District Attorney, David M. Sneed, Melanie Higgins, Assistant District Attorneys*, for appellee.

---

[26] *Tyner v. State*, 313 Ga. App. 557, 563 (6) (722 SE2d 177) (2012).

[27] (Citations and punctuation omitted.) *Stokes v. State*, 281 Ga. 825, 835 (8) (h) (642 SE2d 82) (2007). See *Tyner*, supra ("there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption") (footnote omitted).

[28] (Citation and punctuation omitted.) *Bellamy v. State*, 312 Ga. App. 899, 903-904 (3) (c) (720 SE2d 323) (2011).