## A97A1399. GRINDLE v. CHASTAIN et al.

(493 SE2d 714)

BEASLEY, Judge.

This is a case to remove an obstruction from a private way. See OCGA § 44-9-59. A prior decision affirmed the trial court's denial of Robert Grindle's motion for judgment notwithstanding the mistrial (*"Grindle I"*). Since the decision is unreported, it establishes the law of the case for the parties but does not constitute precedent. OCGA § 9-11-60 (h); Court of Appeals Rule 33 (b). Upon retrial, the jury found against Grindle, who now claims the court erred in failing to grant a directed verdict, in excluding certain evidence, and in failing to give all his requested jury charges. The appeal is from the judgment and from the order dismissing Grindle's motion for new trial. Because the obstruction (primarily a gate and fence) has been removed, some of these assertions of error are moot. Those which are not moot are without merit.

### Factual Background

D. W. Lunceford, Jr. bought a tract of land along the Chestatee River in 1967. Included in the tract was a stretch of the river known as Grindle Shoals, a natural beach and pool area near cascading water. A dirt road running through the tract provided pedestrian and vehicle access to this area from the public highway.

In 1978, Lunceford began to subdivide the property and sell lots along the river to various individuals, including Grindle and Mr. and Mrs. Whitley. The road to Grindle Shoals passed through all the lots sold, including the Whitley and Grindle lots, which were two of the lots closest to the shoals. The 1978 Whitley deed referenced an entrance road which crossed the lot, and the 1979 Grindle deed stated: "There are two permanent access roads which are the entrance to and which cross this lot." Deeds to other lot purchasers contained similar language, while other deeds explicitly granted easements "for ingress and egress along the existing roadways." Lunceford testified he and Grindle had an express understanding at the time he sold the property to Grindle and for the next ten plus years that Lunceford's family and any lot owners in the future would have an easement to use the road traversing Grindle's lot to access Grindle Shoals.

In 1979, Lunceford had a plat made of the property, which con-

tained the notation: "All interior roads are private with a 40 foot easement reserved along the center line." The road at issue was shown. In 1980, Lunceford issued new deeds to the Whitleys and Grindle, correcting the amount of acreage conveyed and referencing the plat. In 1984, Lunceford publicized Grindle Shoals as a "common use area" for all those owning property in the Grindle Shoals subdivision and set forth rules of conduct governing its use.

Substantial evidence demonstrated that the road to Grindle Shoals existed at the time Lunceford purchased the property, existed for the next 11 years before he sold lots to the Whitleys and Grindle, existed when he sold lots to the Whitleys and Grindle, and has since existed continuously. Over the years, Lunceford has paid Grindle in excess of $8,000 to maintain the road.

To keep non-property owners from using Grindle Shoals, a gate was erected near the subdivision's entrance. It was later moved further into the subdivision and eventually ended up at the Grindle property line. Based on the common understanding that property owners in the subdivision had access to Grindle Shoals through the road, Grindle gave property owners keys to the lock on the gate and posted a sign warning: "You are trespassing unless accompanied by a property owner." For years the property owners used the road for access to Grindle Shoals.

In 1990, the Whitleys abruptly erected a gate at their property line to prevent anyone, including property owners, from using the road. Shortly thereafter, Grindle changed the lock on the gate on his adjacent property and similarly refused access to everyone.

## Procedural History

The other property owners filed a petition in the probate court against Grindle and the Whitleys to remove an obstruction from a private way. See OCGA § 44-9-59 (a). The probate court found plaintiffs had failed to establish the existence of a private way.

Plaintiffs appealed the probate court's determination to the superior court, OCGA § 5-3-2, which tried before a jury the issues of easement by express grant and by adverse possession.[1] The jury found against plaintiffs on the issue of right-of-way by adverse possession and returned a verdict against the Whitleys on the issue of right-of-way by express grant. The Whitleys' obstruction was then

---

[1] There appears to be some question whether OCGA § 44-9-59 allows a superior court to consider easements by grant as the basis for granting a petition to remove an obstruction. See *Mitchell v. Mitchell*, 220 Ga. App. 682, 684 (3) (469 SE2d 540) (1996) ("relief under OCGA § 44-9-59 may be provided only when the private way arose by prescription"); *Clark v. Anderson*, 52 Ga. App. 500 (2) (183 SE 852) (1936). But no party raises this issue on appeal.

removed. Because the jury was unable to reach a verdict as to Grindle, the court declared a mistrial and ordered a retrial as to Grindle only. The court denied Grindle's motion for judgment notwithstanding the mistrial, which was affirmed in *Grindle I.*

At retrial, the parties introduced substantially the same evidence as presented at the first trial. The jury found Lunceford had retained the right to use the road through Grindle's lot, and the court entered judgment that the five remaining plaintiffs (who had received their lots from Lunceford) had obtained the right to cross Grindle's land and that he was to remove the obstructions. Grindle immediately moved for a new trial, and a month later sought supersedeas pending disposition of the motion. In seeking supersedeas, which the court denied, Grindle conceded he had removed the obstruction "under protest" that same day. Plaintiffs moved to dismiss the new trial motion on procedural and mootness grounds, the court granted it, and this appeal followed. Grindle sought no supersedeas bond.

1. The plaintiffs claim the appeal is entirely moot because Grindle failed to obtain supersedeas and the obstruction has already been removed. See *Padgett v. Cowart*, 232 Ga. 633 (208 SE2d 455) (1974). They are partially correct.

To prevent the appeal of a mandatory injunction from becoming moot, "it is necessary for the appealing party to obtain a supersedeas. If a supersedeas is not obtained, then the ordered action takes place as ordered, and the appeal becomes moot." *Padgett*, supra at 634. But *Radio Webs v. Tele-Media Corp.*, 249 Ga. 598, 604-605 (2) (292 SE2d 712) (1982), held the "seeking or obtaining of supersedeas is not always determinative of the party's right to pursue an appeal; to rule otherwise would be to place an intolerable burden of emergency action on the superior courts and on this court merely as a formality to preserve the right to appeal. . . . [W]e will proceed case by case and not require its pursuance in every case."

The primary criterion in making this determination is whether the "appellant would derive [any] benefit" from the appeal. *Howard v. Smith*, 226 Ga. 850, 851 (178 SE2d 159) (1970); see *Essuon v. Raynor*, 231 Ga. 297, 298 (2) (201 SE2d 416) (1973) (appeal only moot as to injunctive relief, not as to damages). On this criterion, four of Grindle's enumerations of error are moot; two pertain to the exclusion of evidence and two pertain to the failure to give jury charges. Grindle seeks a new trial to correct these alleged errors, but it would be futile because the plaintiffs' petition sought removal of an obstruction, which is now gone. That purpose of the action has been accomplished, and Grindle's interests in that matter are not at further risk. The basis for the action has evaporated, and there is no relief to which plaintiffs on retrial would be entitled.

However, the judgment also found that an easement by grant existed across Grindle's property. In his remaining two enumerations of error, Grindle argues that the jury verdict was contrary to the evidence and the law and that the court should have entered a directed verdict in his favor. Were Grindle to prevail on these points, he could benefit from a reversal of the judgment and the entry of a new judgment that there is no easement across his property. He could then construct a new barricade or otherwise seek to prevent plaintiffs from traversing his property. To this extent, the appeal is not moot.

2. *Grindle I* expressly addressed the sufficiency of the evidence when denial of Grindle's motion for judgment notwithstanding the mistrial was affirmed. "A motion for judgment notwithstanding a mistrial is analogous to a motion for a directed verdict or motion for judgment notwithstanding the verdict in that the same can be sustained only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In applying this test, the evidence must be construed in favor of the party opposing the motion for judgment notwithstanding mistrial." (Citations and punctuation omitted.) *Lolmaugh v. T.O.C. Retail*, 210 Ga. App. 605, 606 (1) (436 SE2d 708) (1993).

Referring to the deed language and to the disputed evidence as to whether the road in question existed at the time of the deed to Grindle, *Grindle I* held the court did not err in refusing to direct a verdict or in refusing to grant judgment notwithstanding the mistrial. This ruling became the law of the case, OCGA § 9-11-60, and binding in all subsequent proceedings. The rule would be inapplicable only if the evidence at the second trial was "materially different" from the evidence at the first trial. *Harrison v. Dorsey*, 184 Ga. App. 870, 872 (1) (363 SE2d 151) (1987); see *Ogletree v. Navistar Intl. Transp. Corp.*, 227 Ga. App. 11, 14-16 (488 SE2d 97) (1997).

The evidence at the second trial was substantially the same. Grindle's deeds and disputed testimony as to the intent of the parties and as to whether the road existed were introduced at both trials. Thus, *Grindle I*'s ruling that such evidence was sufficient to withstand a directed verdict motion applies to preclude a directed verdict the second time around, too. Moreover, the evidence set forth above does support the jury's verdict. " '[I]f there is any evidence to sustain the verdict of the jury, an appellate court will not disturb it.' [Cit.]" *Asbury v. Ga. World Congress Center*, 212 Ga. App. 628, 631 (2) (442 SE2d 822) (1994).

Grindle's argument that the jury verdict was contrary to law similarly fails. Citing *Farris Constr. Co. v. 3032 Briarcliff Rd. Assoc.*, 247 Ga. 578, 579 (277 SE2d 673) (1981) (implied reservation of easements not recognized under Georgia law), he contends the deeds

were unambiguous and created no easement as a matter of law. Grindle made these same arguments in his appellate brief in *Grindle I*; they were rejected. The law of the case rule settles the question.

Even if the rule did not apply, the language of Grindle's deeds referring to the road is sufficiently ambiguous to create a jury question whether the parties intended to create an easement. See OCGA § 44-5-39 (grantee bound by covenants contained in deed); *Cole v. Thrasher*, 246 Ga. 683, 684 (272 SE2d 696) (1980) (look to entire deed for intent of parties). Grindle's argument that only the first deed, not the corrective deed, should be considered is unavailing. The first deed refers to the existence of permanent access roads crossing the lot, and three paragraphs later it refers to access to the shoals area. This language is ambiguous as to whether Lunceford retained a right to use the road across the lot to access the shoals, and the rules of construction do not resolve the ambiguity.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 22, 1997 —
RECONSIDERATION DENIED NOVEMBER 17, 1997 — ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

B. Dean Grindle, Jr., for appellant.
Carey, Jarrard & Walker, Jack M. Carey, for appellees.