## A11A0402. TROTMAN v. VELOCITEACH PROJECT MANAGEMENT, LLC.
## A11A0403. CERTIFI PROJECT MANAGEMENT CERTIFICATION TRAINING, LLC v. VELOCITEACH PROJECT MANAGEMENT, LLC.

(715 SE2d 449)

DOYLE, Judge.

Following a jury trial, Floyd Trotman III (in Case No. A11A0402) and CertiFi Project Management Certification Training, LLC ("CertiFi") (in Case No. A11A0403) appeal from a judgment and other orders entered against them in a dispute arising from Trotman's continued use of training materials he obtained as a former instructor for Velociteach Project Management, LLC ("Velociteach"). We have consolidated the cases for review, and for the reasons that follow, we affirm in part, vacate the award of attorney fees, and remand.[1]

Viewed in favor of the jury's verdict,[2] the record shows that from 2003 to 2006, Trotman worked as an instructor for Velociteach, a company founded by Andy Crowe, which offered project management training courses to students seeking a Project Management Professional ("PMP") credential. When Trotman's relationship with the company faltered due to a lapse in his own credentials and his unauthorized use of a company credit card, his employment was terminated, and he left the company pursuant to a confidentiality agreement in February 2006. The confidentiality agreement required Trotman to return or delete all course materials and electronic presentation slides, and it prohibited him from soliciting Velociteach customers for a period of three years. In an exit meeting, Trotman assured Velociteach staff that he had returned or deleted any Velociteach teaching materials.[3] Soon thereafter, Trotman asked Velociteach if he could buy instruction kits to teach PMP classes on

---

[1] The parties have raised the issue of this Court's jurisdiction over the appeal, in light of equitable remedies employed by the trial court. We conclude that the Court of Appeals has jurisdiction over the appeal because the issues of equity are ancillary to the trial court's legal determinations at issue. See *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 747-748 (2) (524 SE2d 464) (1999) ("whether an action is an equity case for the purpose of determining jurisdiction on appeal depends upon the issue raised on appeal, not upon how the case is styled nor upon the kinds of relief which may be sought by the complaint, and . . . cases in which the grant or denial of such relief are merely ancillary to underlying issues of law, or would have been a matter of routine once the underlying issues were resolved, are not equity cases") (punctuation and footnote omitted). See also *Nowlin v. Davis*, 278 Ga. 240, n. 1 (599 SE2d 128) (2004) (neither exercise of contempt power nor grant of equitable remedy in a breach of contract case invoked Supreme Court of Georgia's appellate jurisdiction over equity cases).

[2] See *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431 (587 SE2d 876) (2003).

[3] Trotman was assigned a company laptop which contained current Power Point slides and other teaching materials. Trotman had also purchased an older laptop from Velociteach during his tenure.

his own, and Velociteach declined.

In early 2006, Trotman formed his own company, CertiFi, and began teaching training courses on his own. In early 2007, after seeing Trotman in an airport, Crowe decided to search for information about Trotman on the Internet. Crowe discovered a CertiFi website listing Velociteach customers and containing marketing copy that Crowe had written for Velociteach. Crowe then enrolled a student in one of Trotman's classes to observe the course content and materials. Based on the similarities between Trotman's course materials and those he had used previously at Velociteach, Velociteach demanded that CertiFi cease operating in violation of Trotman's confidentiality agreement. Trotman refused, and Velociteach sued him and CertiFi, alleging claims for breach of contract, Uniform Deceptive Trade Practices Act[4] ("UDTPA") violations, fraud, tortious interference with a business relationship, conversion, and misappropriation of trade secrets.

After discovery and the denial of the parties' cross-motions for summary judgment, the action was eventually tried by a jury, which awarded Velociteach $13,750 (from Trotman) and $134,000 (from CertiFi). The trial court also awarded Velociteach $30,000 in attorney fees and entered a permanent injunction requiring Trotman to, inter alia, return all Velociteach materials and abstain from using Velociteach's customer lists. Trotman appeals in Case No. A11A0402, and CertiFi appeals in Case No. A11A0403.[5]

## Case No. A11A0402

1. During the litigation, Velociteach obtained an interlocutory injunction that prohibited Trotman and CertiFi from using any instructional slides contained in a certain exhibit. Based on Trotman's subsequent reformulation and use of a prohibited slide, the trial court found that Trotman had violated the injunction and held him in contempt, ordering Trotman and CertiFi to provide a copy of its teaching materials to Velociteach and pay $1,012.50 in attorney fees incurred by Velociteach while pursuing the contempt motion.

On appeal, Trotman enumerates as error the trial court's interlocutory injunction, but he does not challenge the $1,012.50 attorney fee award, and the only other remedy, disclosure of his teaching materials, was permissible as part of the pending litigation.

---

[4] OCGA § 10-1-372.

[5] A related appeal, Case No. A11A0404, has already been disposed of in an unpublished decision affirming the trial court's denial of the defendants' motion for inclusion of substituted transcripts. In Case No. A11A0402, Trotman limited his enumerated errors to only those errors that would not require the reversal of the verdict against him or the damages award in the amount of $13,750. We therefore do not address the withdrawn enumerations.

As Trotman points to no other remedy affecting him or CertiFi resulting from the contempt finding itself, this enumeration presents nothing for review.[6]

2. Trotman argues that the evidence and verdict did not authorize the trial court to issue a permanent injunction against him based on a violation of the UDTPA. We disagree.

"Equitable relief is generally a matter within the sound discretion of the trial court. The action of the trial court should be sustained on review where such discretion has not been abused."[7]

(a) Based on the jury's verdict that Trotman violated the UDTPA, the trial court granted an injunction against Trotman that (1) prohibited him from using a specified trial exhibit containing Velociteach course materials, (2) required him to return all Velociteach property and course materials, (3) forbade him from using Velociteach's customer lists, and (4) required disclosure of each person to whom he had shown the enjoined materials. Trotman argues that because only he, and not CertiFi, was found to have violated the UDTPA, the only basis for the finding would be his failure to maintain his PMP certification. And because he later remedied the lapse in his certification, he argues that this lapse in certification could not support the injunctive relief granted by the trial court.

This argument ignores the fact that the trial evidence supported a finding that he personally violated the UDTPA, regardless of whether the jury attributed his behavior to CertiFi. The UDTPA provides as follows, in relevant part:

> (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
>
> . . .
>
> (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
>
> . . .

---

[6] See *Grindle v. Chastain*, 229 Ga. App. 386, 388 (1) (493 SE2d 714) (1997) ("[t]he primary criterion in making [the mootness] determination is whether the appellant would derive any benefit from the appeal" of the moot issue) (punctuation omitted).

[7] (Punctuation omitted.) *Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553, 557 (2) (501 SE2d 501) (1998).

(7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

. . .

(9) Advertises goods or services with intent not to sell them as advertised; [or]

. . .

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

(b) In order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding.[8]

. . .

At trial, there was evidence that Trotman created a misleading advertisement stating that CertiFi had developed course content over a four-year period, which would have referred to the time Trotman was with Velociteach, not CertiFi. There was also evidence that Trotman solicited former Velociteach students on behalf of CertiFi, referencing the Velociteach course and falsely holding himself out as PMP certified. Velociteach also introduced evidence that Trotman published a list of Velociteach customers and falsely represented them to be CertiFi customers. Finally, there was evidence that Trotman used nearly duplicate versions of certain Velociteach course materials without its consent. This evidence supported the jury's finding that he violated the UDTPA, and the trial court did not abuse its discretion by awarding equitable relief to Velociteach against Trotman based on the jury's finding.[9]

(b) Trotman also argues that an injunction against future conduct is unwarranted because his confidentiality agreement has expired, and his wrongful conduct took place in the past and is not likely to recur. This argument is misplaced. There was evidence supporting a finding that Trotman's conduct violated the UDTPA regardless of his confidentiality agreement, and the nature of the wrongful behavior was not such that it could not be repeated, i.e., by re-creating confusing or misleading marketing materials or re-using Velociteach's proprietary course materials.[10] Nor was the injunc-

---

[8] OCGA § 10-1-372.

[9] See *Essex Group, Inc.*, 269 Ga. at 557-558 (2).

[10] Absent an actual case or controversy, we cannot address Trotman's specific concerns about his future conduct or the similarity of his future teaching materials to the course material protected by the injunction. Concerns "based wholly on speculation about what might or might not occur at some point in the future" present nothing for review. *Mullin v. Roy*, 287 Ga. 810, 812 (3) (700 SE2d 370) (2010).

tion's breadth an abuse of the trial court's discretion. The injunction essentially pertained to the use of Velociteach course materials and customer list, and it did not prohibit Trotman from engaging in other PMP teaching activity. Nor was it an abuse of discretion to allow Velociteach five years to monitor Trotman's courses, because the harm to Velociteach would not diminish over time if Trotman unfairly competed with it. Accordingly, this enumeration provides no basis for reversal.[11]

3. Trotman next challenges the trial court's failure to give his requested jury charge on the UDTPA claim. "In order for a refusal to charge to be error, the request[ ] must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge."[12] Trotman's requested charge was as follows:

> Although a finding of actual confusion [in the marketplace] is not necessary to prove a likelihood of confusion, it is nevertheless the best evidence of a likelihood of confusion. Coexistence in the marketplace over a significant period of time with no evidence of actual confusion raises a presumption against a likelihood of confusion; however, the presumption may be rebutted by evidence of other factors tending to support a finding of a likelihood of confusion.

As support, Trotman relies on *Ackerman Security Systems v. Design Security Systems*,[13] which included the following language: "In the case at hand, the trial court . . . incorrectly applied the likelihood of confusion test by requiring a showing of actual confusion. . . . *Although evidence of actual confusion is obviously the best evidence of a likelihood of confusion*, it is not necessary to a finding of likelihood of confusion."[14] The emphasized portion of this statement was dicta and not a statement of settled law;[15] thus the requested charge was not entirely correct and accurate. Further, the trial court correctly charged the jury as to the settled law stated in *Ackerman*, i.e., that actual confusion in the marketplace need not be shown. We discern

---

[11] *Essex Group, Inc.*, 269 Ga. at 558 (2).

[12] (Punctuation omitted.) *Hefner v. Maiorana*, 259 Ga. App. 176, 177 (1) (576 SE2d 580) (2003).

[13] 201 Ga. App. 805 (412 SE2d 588) (1991).

[14] (Citations and punctuation omitted; emphasis supplied.) Id. at 806 (1).

[15] See, e.g., *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (courts are not bound to follow a statement in an opinion "concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the" prior case) (punctuation omitted).

no reversible error here.[16]

## Case No. A11A0403

4. CertiFi contends that the evidence was insufficient to support the jury's verdict on the conversion claim, which was predicated on Trotman's use of Velociteach training materials. Specifically, CertiFi argues that because Trotman's confidentiality agreement required him to return or destroy any training materials, Velociteach had abandoned them, which would preclude a conversion claim due to an absence of Velociteach's right of possession.[17] The confidentiality agreement does not evince an intent to abandon the property, however; instead, it shows Velociteach's attempt to remain in exclusive control and possession of its confidential information. This is wholly consistent with the conversion claim because it shows that Trotman's retention and use of the materials was unauthorized: "The very essence of conversion is that the [defendant's] act of dominion is wrongfully asserted."[18]

CertiFi also argues that the intangible teaching materials on the laptop were not "novel" and therefore not subject to a conversion claim.[19] Nevertheless, this argument is belied by the evidence that the methodology and teaching concepts reflected in the Velociteach course materials were originated by and exclusive to Velociteach. Accordingly, this enumeration presents no basis for reversal.

5. CertiFi also challenges the sufficiency of the evidence as to the value element of Velociteach's unjust enrichment claim. CertiFi relies on *Phoenix Airline Svcs. v. Metro Airlines*,[20] which is physical precedent only[21] and states that if "an award of monetary damages is made for unjust enrichment, it must, of course, be supported by evidence from which it can be determined to a reasonable certainty that the defendants in fact realized such a gain."[22] Here, there was

---

[16] *Amon-Ra v. Dept. of Transp.*, 259 Ga. App. 313, 315 (576 SE2d 578) (2003) ("A request to charge must embody a correct, applicable and complete statement of law, and be so couched as not to have a tendency to confuse and mislead the jury and to becloud the issues.") (punctuation omitted).

[17] See generally *Metzger v. Americredit Financial Svcs.*, 273 Ga. App. 453, 454 (615 SE2d 120) (2005) ("In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.") (punctuation omitted).

[18] (Punctuation omitted.) *Habel v. Tavormina*, 266 Ga. App. 613, 615 (1) (597 SE2d 645) (2004).

[19] See, e.g., *Burgess v. Coca-Cola Co.*, 245 Ga. App. 206, 209 (1) (a) (536 SE2d 764) (2000) (addressing conversion claim based on Coca-Cola's anthropomorphic polar bear).

[20] 194 Ga. App. 120, 125 (390 SE2d 219) (1989), reversed on other grounds, 260 Ga. 584 (397 SE2d 699) (1990).

[21] See Court of Appeals Rule 33 (a).

[22] 194 Ga. App. at 125-126 (3).

evidence that Trotman had unsuccessfully requested to purchase instruction kits from Velociteach, and that the kits were valued at $1,000 each. Thus, the jury could conclude that Trotman avoided paying $1,000 in cost for each kit he used to teach CertiFi students. CertiFi does not dispute that Trotman taught more than 300 students on its behalf. This evidence authorized the jury's damages award.[23]

6. CertiFi also challenges the trial court's award of $30,000 in attorney fees under OCGA § 9-15-14 (b) based on its finding that the defendants unnecessarily expanded the proceeding. That Code section authorizes an attorney fee award based on conduct "including, but not limited to, abuses of discovery procedures. . . ."[24] Here, the trial court cited a series of orders granting Velociteach's motion to compel, prohibiting the use of certain teaching slides, granting a motion for contempt, and ordering production of documents — all of which were the product of Trotman's and CertiFi's resistance to discovery and failure to cooperate with court orders.

Based on this behavior, the trial court did not abuse its discretion by awarding attorney fees under OCGA § 9-15-14 (b),[25] but the trial court's order fails to show how it apportioned its award to fees generated based on sanctionable behavior. "As we have held in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. [Thus,] '[l]ump sum' or unapportioned attorney fees awards are not permitted in Georgia."[26] Velociteach's counsel submitted an affidavit with billing statements totaling $95,974.66. The trial court's award of $30,000 may have been reasonable, but the trial court's order, "[o]n its face . . . fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the amount awarded was $[3]0,000 as opposed to any other amount."[27] Accordingly, we must vacate the award and remand for appropriate factfinding with respect to the amount of attorney fees to be assessed.[28]

7. (a) CertiFi contends that the trial court erred by failing to give its requested jury charge on waiver with respect to the conversion

---

[23] See *White v. Arthur Enterprises, Inc.*, 219 Ga. App. 124 (1) (464 SE2d 225) (1995) (evidence that computer files were valued at $90,000 authorized the jury to find that two defendants "each realized a gain of $18,000 from the misappropriation of those files").

[24] OCGA § 9-15-14 (b).

[25] See *Century Center at Braselton v. Town of Braselton*, 285 Ga. 380, 381-382 (1) (677 SE2d 106) (2009).

[26] (Citation and punctuation omitted.) *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009).

[27] *Huggins v. Chapin*, 233 Ga. App. 109, 110 (503 SE2d 356) (1998).

[28] See *Brewer*, 296 Ga. App. at 31 (2).

claim. However, in light of our holding in Division 4, that the confidentiality agreement did not evince Velociteach's abandonment or waiver of its right to exclusively possess its course materials, this charge was not authorized by the evidence.[29]

(b) CertiFi also asserts as error the trial court's failure to give its requested jury charge on apportionment of damages under OCGA § 51-12-33, in light of evidence that Trotman had another Velociteach employee help him make revisions to the Velociteach teaching materials and that he hired a marketing firm to edit Velociteach presentation slides and "put some lipstick on" a chart in a Velociteach workbook. Nevertheless, "[a] trial court does not err in refusing to give a requested charge which is confusing, misleading, inapt, not precisely tailored or adjusted to the evidence, or not authorized by the evidence."[30] At trial, Trotman explained that he was personally responsible for the content of the revisions to the teaching materials and he did not assign any blame to his fellow employee or the marketing firm he hired. Further, the evidence is undisputed that he alone was responsible for using the materials for teaching. Based on the record before us, we discern no reversible error in the trial court's failure to give the requested charge.[31]

8. CertiFi challenges the trial court's exclusion of certain testimony that Crowe, the founder of Velociteach, was motivated by racial bias when he terminated Trotman. Specifically, CertiFi proffered testimony from a Velociteach employee who heard Crowe use racially derogatory language in reference to Trotman.[32] The trial court sustained Velociteach's objection to the testimony on relevance grounds.

> The decision to admit or exclude evidence is committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. When an issue is raised whether the probative value of evidence is outweighed by its tendency to unduly arouse the jury's emotions of prejudice, hostility, or sympathy, a trial court's decision regarding admissibility is a matter of discretion. Further, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the

---

[29] See *Hefner*, 259 Ga. App. at 177 (1) (jury charges must be adjusted to the evidence).

[30] (Punctuation omitted.) *Keogler v. Krasnoff*, 268 Ga. App. 250, 255 (2) (601 SE2d 788) (2004).

[31] See id. at 255-256 (2).

[32] The witness' proffered testimony was equivocal, but at one point he testified that he believed Crowe was speaking about Trotman.

danger of unfair prejudice, confusion of the issues, or misleading of the jury.[33]

Here, the issues at trial centered on the similarity between the teaching material used by Trotman/CertiFi to that created by Crowe/Velociteach and Trotman's authority to use them after his termination. The proffered witness stated that any derogatory statements made by Crowe were not in connection with Crowe's termination of Trotman, who had received favorable evaluations prior to the events leading up to his termination, i.e., the lapse in Trotman's PMP credentials and his misuse of the company credit card. Based on the record before us and the inflammatory nature of the proffered evidence, we discern no clear abuse of the trial court's discretion.[34]

9. Finally, CertiFi attempts to incorporate by reference to its brief in the companion case an argument challenging the sufficiency of the evidence to show that it tortiously interfered with Velociteach's business relationships or contracts. This enumeration was not otherwise supported by argument or citation to authority.[35] Nevertheless, we note that during his tenure at Velociteach, Trotman had taught classes to students from a company called Axiom, including one class shortly before his termination. Shortly after his termination, Trotman solicited Axiom on behalf of CertiFi based on his prior contact with them, and Axiom employed CertiFi and declined to employ Velociteach. Crowe, Velociteach's founder, testified as to the loss of Axiom as a paying client. Thus, this enumeration is without merit.[36]

10. CertiFi and Trotman's remaining enumerations are moot.

*Judgments affirmed in part and vacated in part, and cases remanded with direction. Ellington, C. J., and Miller, P. J., concur.*

---

[33] (Citation and punctuation omitted.) *Sellers v. Burrowes*, 302 Ga. App. 667, 671 (2) (691 SE2d 607) (2010). See also *Mitchell v. State*, 200 Ga. App. 146, 148 (2) (407 SE2d 115) (1991) ("[A]nything not legitimately arising out of the trial of the case, which tends to destroy the impartiality of the juror, should be discountenanced.") (punctuation omitted).

[34] See *Sellers*, 302 Ga. App. at 671-672 (2).

[35] See Court of Appeals Rule 25; *Sirdah v. North Springs Assoc.*, 304 Ga. App. 348, 352 (2) (696 SE2d 391) (2010) ("an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by Rule 25 (a) (3)); *Fletcher v. State*, 307 Ga. App. 131, 133 (3) (704 SE2d 222) (2010) (incorporation of argument by reference to other arguments resulted in abandonment of an enumeration not otherwise supported).

[36] See generally *Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (1) (596 SE2d 785) (2004) (elements of tortious interference).

## ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, Trotman contends that the contempt finding was not moot because it served as the basis for the attorney fee award and the injunction. To the extent that the contempt finding was not moot, based on our review of the order and the record, we discern no reversible error.

Trotman also contends that this Court failed to grant his motion to unseal and consider a portion of the record. A sealed record protects against disclosure to the public, but this Court need not grant a motion to unseal the record in order to consider the contents under seal, as it did in this case.[37] Thus, the pending motion to unseal the sealed portion of the record is denied, and the motion for reconsideration is denied.

*Motion for reconsideration denied.*

DECIDED JULY 13, 2011 —
RECONSIDERATION DENIED JULY 28, 2011 — ▮▮▮▮▮▮▮

*McGahren, Gaskill & York, Matthew F. McGahren, Eric J. Marlett,* for appellants.

*Robertson, Bodoh & Nasrallah, Mathew G. Nasrallah,* for appellee.

---

[37] See, e.g., *Riley v. State,* 251 Ga. App. 64, 66 (1) (553 SE2d 374) (2001) ("Having reviewed the record provided under seal, we find nothing that contravenes the finding by the trial court.").