**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 29, 2025**

# In the Court of Appeals of Georgia

A25A1146. GA BIOSCIENCE RESEARCH, INC. v. TRULIEVE GA, INC.

A25A1153. ASPIRE MEDICAL PARTNERS, LLC v. TRULIEVE GA, INC.

PIPKIN, Judge.

In November 2019, the General Assembly enacted "Georgia's Hope Act," which, among other things, established the Georgia Access to Medical Cannabis Commission ("the GMCC") and authorizes the production, manufacturing, and dispensing of low THC oil in this state. See Ga. Law 2019, p. 43, §§ 1, 2; OCGA § 16-12-200 et seq. The GMCC is empowered to issue licenses authorizing "the licensee to grow cannabis in indoor facilities for the use of producing low THC oil and to manufacture low THC oil." (Citation and punctuation omitted.) *Symphony Med. v. FFD GA Holdings*, 370 Ga. App. 66, 67 (1) (893 SE2d 810) (2023). Appellants GA Bioscience Research, Inc. ("GABRI") and Aspire Medical Partners, LLC ("Aspire"),

each sought licensing from the GMCC and, when they were unsuccessful, challenged that decision in numerous forums in this State. At the conclusion of their protracted litigation -- which ended after GABRI and Aspire dismissed their actions without ever having litigated its merits -- the Fulton County Superior Court awarded attorney fees to Appellee Trulieve GA, Inc. ("Trulieve") pursuant to OCGA § 9-15-14 (b). We granted Appellants' application for discretionary appeal to review this award. As explained below, we affirm the superior court's findings of sanctionable conduct, but we vacate the amount of attorney fees awarded and remand the case for further proceedings.

> Pursuant to OCGA § 9-15-14 (b), a court
>
> may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]

Id. As we have explained before,

> [w]e utilize an abuse of discretion standard of review when examining an award of attorney fees made pursuant to OCGA § 9-15-14 (b). Under an abuse of discretion standard of review, we are to review the trial court's legal holdings de novo, and we uphold the trial court's factual findings

2

as long as they are not clearly erroneous, which means there is some evidence in the record to support them.

(Citation and punctuation omitted.) *Cohen v. Rogers*, 341 Ga. App. 146, 148 (798 SE2d 701) (2017). With this standard in mind, we turn to the lengthy and complex procedural background of these appeals.

In November 2020, the GMCC initiated the licensing process -- which was conducted by means of a "competitive sealed proposal process," see *Symphony Med.*, 370 Ga. App. at 67 (1) -- and, in July 2021, the commission issued notices of intent to award the relevant licenses. Neither Appellant was awarded a license, and each Appellant thereafter lodged a post-award protest. In September 2022, after the benefit of a hearing, an administrative law judge issued a lengthy ruling denying Appellants' respective petitions for relief.

Just days later, each Appellant purported to seek judicial review of that decision pursuant to the Georgia Administrative Procedure Act ("APA"), see OCGA § 50-13-1 et seq; GABRI sough relief in the Tift County Superior Court, while Aspire sought relief in the Warren County Superior Court ("the APA actions"). The named respondents in the APA actions thereafter moved to dismiss the proceedings in the respective superior courts.

Before the motions to dismiss were decided in Tift and Warren Counties, each Appellant filed a petition for certiorari pursuant to OCGA § 5-4-3 (2022)[1] -- which has now been replaced by petitions for review[2] -- in the Fulton County Superior Court seeking judicial review of the final decision of the hearing officer ("the certiorari actions").[3]

---

[1] For reasons that are not immediately apparent, GABRI's initial certiorari petition is not included in the record; the parties agree, however, that the petition was filed, that it was filed on October 17, 2022, and that it challenged the hearing officer's decision. Further, it appears that Aspire, who sought two different types of licenses from the GMCC, initiated at least two different certiorari proceedings in the Fulton County Superior Court; however, it does not appear that a complete record of both proceedings was transmitted to this Court. Instead, the record is peppered with motions and orders from the parallel proceeding that are attached as exhibits to various filings in the instant action. The haphazard presentation and organization of the approximately 5,000-page record in this matter -- which includes numerous transcripts imbedded in the record of both appeals, as well as repeated transcripts and record volumes -- has hampered this Court's ability to discern and appropriately explain the exceedingly complex underlying procedural history of these appeals.

[2] See OCGA §§ 5-3-1 to OCGA § 5-3-21.

[3] Although both Aspire and GABRI contend that they filed their petitions for certiorari in Fulton County "while [they] awaited this Court's decision" on their discretionary applications filed following the dismissal of the superior court actions in Tift and Warren Counties, the record does not support this time line. The relevant applications following the superior court actions were filed in mid-November 2022, almost a month after the October 2022 filing of their respective petitions for certiorari.

Shortly thereafter, the APA actions in Tift and Warren Counties were each dismissed; each superior court concluded that the APA was inapplicable and, thus, did not confer jurisdiction on the respective court to review the hearing officer's decision. GABRI and Aspire each filed an application for discretionary appeal from the dismissal of their respective APA actions; in November 2022, this Court granted their applications, along with those from similarly situated parties, to consider whether the APA provided a mechanism for judicial review ("the APA appeal"). See *Symphony Med.*, 370 Ga. at 66.

Back in Fulton County Superior Court, Aspire's counsel withdrew in January 2023, and he was substituted with counsel who was also representing GABRI; a few weeks later, GABRI voluntarily dismissed its pending petition for certiorari in Fulton County. Aspire's petition remained, and that party successfully moved the Fulton County Superior Court for a stay in its certiorari proceedings pending a ruling from this Court in the APA appeal; notably, Aspire suggested during one of the hearings on the motion that the superior court could "sit" on various matters and see how the case developed.

Months later, despite having obtained the stay pending resolution of the APA appeal in this Court, Aspire failed to cause the requisite transcript to be transmitted to this Court in the APA appeal. Consequently, in May 2023, approximately six months after this Court granted Aspire's discretionary application, the Warren County Superior Court dismissed Aspire's APA appeal; the Warren County Superior Court determined that Aspire's conduct was "inexcusable" and that the delay disrupted the timely consideration of the appeal in this Court. Although Aspire sought review of that decision in this Court, that appeal was dismissed as a consequence of Aspire's failure to follow discretionary appeal procedures. See *Aspire Med. Partners v. Ga. Access to Med. Cannabis Comm.*, A23A1727 (Ga. App. Aug. 1, 2023).

Meanwhile, back in Fulton County, Aspire's certiorari petition was still pending and still stayed,[4] and the relevant respondents, including Appellee Trulieve, moved to lift Aspire's stay because Aspire's APA appeal had been dismissed by the Warren County Superior Court. In response, Aspire argued that the stay was entered as a matter of judicial economy and that the mere dismissal of its APA appeal did not

---

[4] Aspire filed a first amended petition for certiorari in February 2023.

negate the fact that a decision in the remaining APA appeals could "have material impacts" on Aspire's still-pending certiorari petition in Fulton County.[5]

As to GABRI, in July 2023, that party purported to revive its dismissed certiorari action by filing a renewal certiorari petition in the Fulton County Superior Court pursuant to OCGA § 9-2-61 (a); GABRI also filed a demand for a jury trial and moved to stay the action pending this Court's decision in the APA appeal. The relevant respondents, including Trulieve, moved to dismiss GABRI's renewal certiorari petition as improper, to strike the jury demand as inapplicable, to deny the motion to stay as unwarranted, and to expedite the matter. In response, GABRI withdrew its demand for a jury trial, and the Fulton County Superior Court set the matter for a final hearing on October 8, 2023.

Before the October 8 hearing, GABRI emailed the relevant superior court judge in Fulton County to request that the final hearing on the renewed certiorari petition be "recast" as a "status conference" in light of the number of pending motions, as

_____

[5] It appears that a stay issued in Aspire's other certiorari proceeding -- which, again, does not give rise to this appeal -- was lifted in Fulton County after the superior court concluded that Aspire's "delay in filing the transcript to perfect its [APA] appeal demonstrates a lack of urgency" and resulted "in a needless delay of more than six months."

well as the fact that there were similar matters pending before other superior court judges in Fulton County; GABRI also insisted that "[v]irtually all courts have stayed [similar] actions or are considering [such stays] pending resolution of [the APA] appeals." Although the relevant superior court judge agreed to GABRI's request to "recast" the hearing, GABRI again reached out to the superior court judge -- just days before the hearing -- to report an unexpected conflict and to ask the judge to either reschedule the conference or limit its duration. Further still, GABRI requested that the matters be transferred to a different superior court judge who was handling related cases. The October 8 hearing was thereafter canceled and the matter was transferred to another Fulton County Superior Court judge who was handling similar matters. Just days later, this Court announced its decision in the APA appeals, in which this Court determined, in relevant part, that the APA did not apply to decisions from the GMCC and, consequently, that GABRI was not entitled to appellate relief. See *Symphany Med*. 370 Ga. App. at 73 (3).

Apparently undeterred by this Court's decision, Appellants' counsel advised the superior court and opposing counsel that the parties to the APA appeals were "no doubt, still considering their appellate options," and counsel asked the superior court

to "keep the stay in place until all appellate avenues ha[d] been exhausted." The Fulton County Superior Court nevertheless set both pending certiorari petitions for a hearing as follows: the GABRI matter was set for February 5, 2024, with briefing due on January 24, 2024, while the Aspire matter was set for February 5, 2024, with briefing due by January 26, 2024. In the weeks leading up to the hearing Trulieve, rather than either Appellant, requested the records relevant to the hearing officer's decision.

On January 18, 2024, citing issues with obtaining relevant records from the hearing officer, GABRI requested a week-long extension to file its brief; the superior court granted GABRI an extension until Friday, January 26. On January 26, 2024, at 11:49 p.m. -- just minutes before the briefing deadline in each case -- both Aspire and GABRI voluntarily dismissed their pending certiorari petitions.

Trulieve thereafter moved for attorney fees in both cases pursuant to OCGA § 9-15-14 (b), asserting that Appellants' "gamesmanship in [the post-hearing litigation] was substantially vexatious and thus lacking substantial justification." In response, GABRI and Aspire asserted that they had the legal right to voluntarily

dismiss their matters, and they both argued that the litigation and the "manner in which they pursued" it was substantially justified.

Following a two-day hearing -- during which the superior court received extensive argument, testimony, and documentary evidence -- the superior court granted the motion in both cases in detailed orders.

After expressly identifying OCGA § 9-15-14 (b) as the basis for the award, the superior court determined that certain conduct by GABRI was "interposed for the purpose of delay or harassment, or unnecessarily expanded the litigation," including the following: the filing of a certiorari petition that was voluntarily dismissed before argument could be heard "regarding multiple defects in [the] petition"; the filing of a purported "renewal" petition for certiorari; the filing of a "frivolous" jury demand in association with the renewed certiorari petition; by twice seeking to delay the October 8 hearing on Trulieve's motions; by asking for an extension of time before the February 5 hearing only to dismiss the case at 11:49 p.m. on the day the final brief was due; and by pursuing the litigation despite GABRI failing to renew its annual registration in June 2023 and being administratively dissolved by the Secretary of State in September 2023. The superior court concluded that GABRI had done nothing to

pursue its certiorari litigation -- even after its APA appeal was unsuccessful -- but, instead, had "delayed the case as long as it could, dismissing its first action without prejudice before the merits of its case could be decided, and then dismissing its renewal action with prejudice minutes before its brief was due."

As for the fees sought by Trulieve against GABRI, the superior court, noting the extensive testimony and documentary evidence presented at the hearing, concluded that the hourly rates of Trulieve's attorneys were "fair and reasonable in the metro-Atlanta area based on the[ir] experience and education"; that the time expended by the attorneys "was reasonable and necessary and that the fees sought were incurred because of the listed sanctionable conduct"; and that the amount of $62,155 was "reasonable and necessary in light of the record and proceedings in these actions," which included only the certiorari proceedings.

As to Aspire, the superior court concluded that the certiorari proceedings were "brought and prosecuted for the purpose of delay and/or harassment and that [Aspire had] unnecessarily expanded litigation by improper conduct" and, thus, that attorney fees were warranted under OCGA § 9-15-14 (b). The conduct supporting the award, as identified by the superior court, included the following: suggesting in the stay

hearing that the court "sit" on the matter and indicating that discovery might be warranted; purporting to use the certiorari proceedings as an alternative to the APA proceedings but failing to proceed with the certiorari litigation even after the APA case had been dismissed by Warren County; having the certiorari case stayed pending the outcome of the APA case but then delaying adjudication of the APA case by failing to file a transcript; delaying the certiorari litigation further by filing an improper direct appeal following the dismissal of the APA appeal; delaying the certiorari proceedings by representing that a decision from this Court was necessary to resolve the pending certiorari petition despite having no pending matter before the Court of Appeals; seeking to continue the stay in the Aspire certiorari after this Court decided the APA appeals because Aspire wanted to allow "all appellate avenues [to be] exhausted"; and by waiting until January 26, 2024 -- the day on which the final brief was due -- to dismiss its certiorari proceedings.

As for the fees sought by Trulieve against Aspire, the superior court, pointing to the detailed testimony and documentary evidence presented at the fee hearing, concluded that the hourly rates of Trulieve's attorneys were "fair and reasonable in the metro-Atlanta area based on the[ir] experience and education"; that the time

expended by the attorneys "was reasonable and necessary and that the fees sought were incurred because of the listed sanctionable conduct"; and that the amount of $73,460 was "reasonable and necessary in light of the record and proceedings in these actions," which included only the certiorari proceedings.

Raising similar and sometimes interrelated arguments on appeal, GABRI and Aspire challenge the superior court's rulings, contending that the conduct identified in the orders are either "based on actions that occurred in other proceedings[] or do not constitute sanctionable conduct." Appellants also assert that the superior court erred in concluding that the attorney fees were necessary and reasonable and, further, that there was insufficient evidence to support the award amounts. We first turn to Appellants' numerous arguments concerning the sanctionable conduct, and then we turn to the actual fee awards.

1. In their first two arguments, Appellants assert, in effect, that the fee awards were improper because each Appellant was justified in seeking judicial review by alternative means, namely, by filing both the APA petitions in Tift and Warren Counties and by filing the certiorari petitions in the Fulton Superior Court. Appellants contend that appealing from the licensure decision involved matters of first

impression and that it was unclear whether Appellants were required to follow APA procedures or employ a petition for certiorari; according to Appellants, they filed the certiorari petitions within 30 days of the hearing officer's ruling to preserve their appellate rights. While we agree that attorney fees are generally not available while a party is navigating uncharted legal waters in good faith, see, e.g., *Renton v. Watson*, 319 Ga. App. 896, 905 (4) (739 SE2d 19) (2013) -- and, further, that there was a genuine and novel question as to the applicability of the APA to the GMCC's licensing decision -- the superior court here did not fault Appellants for merely pursuing alternative means of seeking judicial review of the licensing decision. Instead, the superior court faulted Appellants' conduct *during* that litigation, namely, that even if there were a legal basis for Appellants' to have pursued the certiorari proceedings, they had no intent to actually litigate the merits of those actions. Accordingly, Appellants' arguments are without merit.

2. Appellants next challenge the superior court's express findings supporting the awards of attorney fees. We address these challenges to the superior court's

express findings -- about 20 arguments in total -- by first considering arguments raised by both Appellants and then turning to Appellants' respective arguments.[6]

(a) *Arguments raised by both Appellants*

(i) Appellants first assert that the superior court erred by faulting them for moving for a stay. According to Appellants, this was not sanctionable conduct -- indeed, they say, "there is nothing inherently wrong with a party requesting a stay" -- and was intended "to preserve its appellate rights and to ensure a judicially economic resolution of the [certiorari petitions] while the APA appeals were pending before this Court." However, the superior court did not fault Appellants merely for moving for a stay; instead, it is plain from the superior court's orders that this was just one instance in the years-long litigation that supports the conclusion that Appellants had no intention of pursuing the certiorari litigation and that it was simply a delaying

---

[6] We do not address the arguments in the order in which they are presented. Further, for clarity and brevity, we have combined arguments where possible.

tactic.[7]

(ii) Both Appellants also assert in numerous arguments that the superior court could not impose attorney fees merely because they had voluntarily dismissed its certiorari petition or renewed it. While we agree with Appellants that, generally speaking, attorney fees are not warranted under OCGA § 9-15-14 solely because a party exercises his or her right to voluntarily dismiss the suit, see *Griggs v. Columbus Bank & Trust*, 188 Ga. App. 741, 743 (374 SE2d 347) (1988), the superior court's detailed order here plainly reflects that the attorney fee awards were based on much more than the voluntary dismissals. In short, the record shows that, even though it should have been obvious to both Appellants -- after years of litigation -- that the certiorari proceeding was the only possible avenue to seek judicial relief from the

---

[7] Aspire argues separately that the superior court erred by finding that Aspire had indicated that "additional discovery was warranted" before a final hearing. However, the transcript from the hearing on the motion to stay reflects that, in advocating for the stay or, alternatively, for the superior court to refrain from acting on pending matters, Aspire argued as follows: "I've had cases before many judges, many smart judges much more smarter than me, that have not ruled on motions for six months to a year because they want us to resolve the case or because they want to see how things unfold *or because they want to see how discovery unfolds*, whatever it is." (Emphasis supplied.) While Aspire did not expressly advocate for discovery, this portion of the transcript could certainly be understood to mean that Aspire was implying that impending discovery may be a reason for the superior court to grant the stay or to refrain from acting on pending motions.

hearing officer's decision, neither Appellant pursued it; instead, when viewed as a whole, the record supports a conclusion that both parties avoided litigating the merits of their claims and dismissed their certiorari petitions at what was, quite literally, the last minute.

As to GABRI, the record suggests that GABRI's initial certiorari petition was procedurally invalid and that GABRI voluntarily dismissed the petition when faced with Trulieve's motion to dismiss; however, because those documents were not included in the record, we cannot speak to the validity of GABRI's initial certiorari petition or its purported renewal. More to the point, the record more than supports the superior court's overarching conclusion that, whatever the reasons for GABRI's voluntary dismissals and renewal, GABRI made little-to-no effort to actually litigate the *merits* of its certiorari litigation. Indeed, when presented with an opportunity to address the merits of its petition at the final hearing -- and even after having been given a briefing extension -- GABRI dismissed its action with prejudice.

Likewise, as to Aspire, the record shows that it filed its certiorari petition and then, within months, secured a stay. Aspire then repeatedly attempted to keep the stay

in place[8] -- thereby avoiding the merits of its decision -- *even after* its APA appeal from the Warren County litigation had been dismissed, *even after* the dismissal of its attempt to appeal the dismissal of its APA appeal, and *even after* this Court had issued a decision determining that the APA did not provide a mechanism for judicial relief. Indeed, like GABRI, when faced with the prospect of having to litigate the merits, it voluntarily dismissed its petition.

(iii) Finally, both parties contend that they dismissed their petitions because they were unable to appropriately prepare for the final hearing given the limited access, complexity, and size of the records pertaining to proceedings before the hearing officer. However, the record is clear that neither GABRI nor Aspire sought

---

[8] In its order awarding attorney fees, the superior court points out that, even after this Court's decision in the APA appeals, Aspire asked the superior court to keep the stay in place "until all avenues ha[d] been exhausted" despite the fact that all of Aspire's appellate avenues had, in fact, been exhausted (as it related to the APA litigation). Despite Aspire's protest to the contrary the superior court's reasoning is sound. At the moment that the Warren County Superior Court dismissed Aspire's APA appeal -- and after this Court dismissed Aspire's appeal from that dismissal -- Aspire had no interest left in the APA litigation; indeed, a decision in that case was relevant only to GABRI, who remained a party to that appeal. Instead, Aspire's sole possible avenue for relief was the certiorari proceedings, which Aspire continually attempted to keep stayed. From these circumstances, the superior court was authorized to conclude that Aspire was using the stay as nothing more than a delaying tactic.

the relevant records; instead, it was actually Trulieve who, in the weeks before the scheduled final hearing, initiated the process to procure the relevant records and who secured an order for the records. Thus, not only does the record belie Appellants' explanation for the dismissal of their petitions, but Appellants' failure to even seek out the hearing officer's records further supports the superior court's ultimate conclusion that neither Appellant had any intent to pursue the actual merits of its certiorari petition.

(b) *Arguments raised by GABRI*

(i) We first turn to GABRI's argument that the superior court erred in predicating the attorney fee award on its demand for a jury trial. GABRI asserts that a fee award in this regard was improper because, GABRI says, it reasonably believed that it was authorized to demand a jury trial pursuant to OCGA § 5-3-5 (b) and (c) and, further, that whether GABRI had this authority under that provision to demand a jury trial is a novel issue never before considered by appellate courts. This argument fails.

As an initial matter, GABRI's claim that it reasonably believed that it could demand a jury trial under OCGA § 5-3-5 is specious. GABRI filed its initial certiorari

19

petition in Fulton County in October 2022, at which point OCGA § 5-3-5 -- which is part of the Superior and State Court Appellate Practice Act ("SSCAPA"), see OCGA § 5-3-1 et seq. -- did not exist. Instead, that statutory scheme was not in effect until July 1, 2023, and it only applies "to petitions for review filed in the superior or state court on or after such date." See Ga. L. 2022, p. ____, § 3-1. The question then, is not whether GABRI believed it was entitled to a jury trial under OCGA § 5-3-5 but instead, whether, as a threshold matter, GABRI could reasonably believe that its renewal petition, which ostensibly relates back to the date of its original petition in October 2022 see, e.g., *Giles v. State Farm Mut. Ins.*, 330 Ga. App. 314, 321 (3) (765 SE2d 413) (2014), was controlled by a statutory scheme not then in effect. GABRI, however, fails to address this procedural conundrum and, thus, has failed to demonstrate that its belief that it could demand a jury trial was reasonable.

Moreover, even if GABRI could demonstrate a colorable belief that it could demand a jury trial pursuant to OCGA § 5-3-5 (b) and (c) -- which is highly doubtful -- the superior court was still authorized to conclude that the jury demand was part of GABRI's on-going attempt to delay and expand litigation by filing pleadings or

motions and then withdrawing them without ever addressing the merits of those filings.[9]

(ii) In its sixth and seventh express findings with respect to GABRI, the superior court explained that, after renewing its certiorari petition, GABRI immediately moved for a stay and that, once the superior court set a final hearing on the petition in October 2023, GABRI remarked in correspondence with the superior court that "virtually all courts have stayed their actions or are considering motions to stay" and complained that it was facing a "collection of motions" from Trulieve in advance of the hearing. On appeal, GABRI attacks this conclusion arguing, in total, as follows: "As demonstrated above, however, filing a motion to stay pending the Court's adjudication of the APA appeals was proper, and there is no basis to award fees for these actions."

Again, however, the superior court's findings in this regard are simply pieces

---

[9] While GABRI eventually withdrew its jury demand, it did so only after Trulieve filed a detailed response highlighting the legal infirmities of GABRI's jury demand.

of the puzzle, the collection of which form a picture of GABRI's unnecessary delay.[10]

Indeed, as soon as GABRI purported to renew its certiorari petition, it moved for a

stay, and, when pressed on the issue, merely relied on the fact that *other courts had done*

*it or were considering it*. Further, the superior court's findings also make plain that

GABRI's complaint about being unable to appropriately respond to Trulieve's

pending motions before the final hearing *was a problem of GABRI's own making*.

Indeed, the "collection" of filings by Trulieve -- a response to GABRI's motion to

---

[10] GABRI also contends that the superior court erroneously determined that GABRI had obtained a stay pending the resolution of the APA appeals yet had failed to expeditiously execute that appeal. While we agree that the record does not show that GABRI secured a stay, the superior court's order -- when read as a whole -- reflects that this was merely a passing misstatement. The superior court's order makes plain that the court was referring to the conduct of "[GABRI's] counsel *in a related case*" -- that is to say, counsel who was simultaneously representing both GABRI and Aspire at that time -- and how his conduct could have delayed the resolution of the APA appeal, to which GABRI was a party. In a similar vein, GABRI asserts in passing that, because this Court decided the APA appeals within the time frame required by law, the decision in the APA appeals "was not delayed by any purported failure [of Aspire] to timely file a transcript." However, this argument fails for at least two reasons. As an initial matter, the determination that Aspire's failure to transmit the record in the APA appeals caused a delay in the consideration of that appeal was reached by the Warren County Superior Court; that conclusion went unchallenged as a consequence of Aspire's failure to properly appeal that ruling. Moreover, it does not follow that, because this Court resolved the APA appeal before the relevant deadline, Aspire's failure to transmit the relevant transcript did not cause delay.

stay, motion to strike jury demand, and motion to dismiss -- were all triggered by GABRI's filings. Accordingly, there is no merit to this argument.[11]

(iii) Finally, GABRI argues that it was error to base the attorney fee award on the fact that GABRI had "failed to timely file its annual registration" and had been given notice of administrative dissolution in June 2023. According to GABRI, the superior court was not authorized to consider these facts because they occurred before the filing of the renewal certiorari petition. However, it is undisputed that GABRI's failure to timely file its annual registration and the issuance of the notice of administrative dissolution occurred *after* the filing of its initial certiorari petition in October 2022, the date to which the renewal certiorari petition would purportedly relate back; GABRI conveniently fails to address this time line. Moreover, even if it

_____

[11] The superior court's eighth express finding of fact in GABRI's case also concerns the October 8 hearing. Specifically, the superior court highlighted the fact that GABRI attempted to delay the October 2023 hearing in a number of different ways, including by asking that the petition be transferred to a different judge. On appeal, GABRI admits that it requested the transfer but maintains that it was to permit similar litigation to "proceed[] simultaneously before the same judge and to avoid inconsistent judgments." However, despite GABRI's insistence that its request was for the benefit of judicial economy, this request could also be appropriately viewed as yet another delaying tactic; indeed, such a conclusion is bolstered by the fact that GABRI did not, in fact, pursue the merits of the petition after asking to have it considered by a different judge.

23

were improper for the superior court to consider these facts, GABRI does *not* challenge the superior court's reliance on the more potent fact that, while GABRI was purportedly litigating its renewal certiorari petition, it had already been administratively dissolved by the Secretary of State. Consequently, there is no error and, even if there were, it would offer no basis for reversal.

(c) ***Arguments raised by Aspire***

(i) We first consider Aspire's arguments concerning the APA appeal stemming from the superior court action in Warren County. Aspire asserts in two arguments that, because the attorney fee award concerns only the certiorari litigation in Fulton County that "any conduct from the Warren County case cannot provide a basis for the [fee] [a]ward." These arguments are disingenuous at best. There can be no dispute that Aspire leveraged its pending appeal from the APA proceedings in Warren County to seek a stay in the certiorari proceedings in Fulton County; indeed, it was the basis for its motion to stay the certiorari proceedings. As a result, Aspire's conduct in the APA appeals directly impacted the certiorari proceedings in Fulton County, and these

arguments are patently meritless.[12]

(ii) In its second express finding concerning Aspire, the superior court explained that, although Aspire purported to file the certiorari petition as an alternative to the Warren County APA petition, Aspire "refused to proceed with [the certiorari matter] and indeed attempted to delay adjudication of this case . . . even after the Warren County [a]ction was dismissed." Aspire contends separately on appeal that the order "does not identify any instances where Aspire refused to proceed or delayed adjudication." However, there is no merit to this argument.

The record plainly supports the superior court's conclusion that, while Aspire purported to file its certiorari petition as an alternative means of relief from the hearing officer's decision, Aspire took no action to litigate the merits of its certiorari petition in Fulton County, even *after* its Warren County APA litigation had concluded

---

[12] In the superior court's sixth express finding, the court notes that, once this Court had decided the APA appeals, Trulieve notified the superior court of the decision and asked that any stay be lifted. On appeal, Aspire complains that this finding concerns Trulieve's conduct and, thus, cannot form the basis of an attorney fee award against Aspire. This argument misconstrues the superior court's order. The superior court's sixth express finding is a precursor to its seventh finding, namely, that Aspire sought to continue its stay of the certiorari proceedings even after its own APA appeal had been dismissed and even after this Court has determined that the APA did not provide an avenue for judicial relief.

(because its appeal had been dismissed) and *even after* this Court had held that the APA did not provide a mechanism for judicial relief, which would have left certiorari proceedings as the only remaining avenue for relief.

(iii) In its fifth express finding as to Aspire, the superior court determined that Aspire had failed to keep the superior court appropriately apprised of the status of its matters pending before this Court. On appeal, Aspire asserts that Trulieve alerted the superior court to the relevant decisions of this Court and, consequently, that Aspire's failure in this regard does not support an award of attorney fees. However, the mere fact that Trulieve kept the superior court aware of matters pending before this Court does not negate the superior court's conclusion that Aspire's failure in this regard is, yet again, one more instance supporting the overarching idea that Aspire was using the certiorari proceedings to delay matters and extend the litigation.

(d) In sum, the superior court's order reflects -- and the record supports -- that Appellants initiated the certiorari proceedings in the Fulton County Superior Court and then subsequently either had their entire proceeding stayed or dismissed their petitions. Aspire continued to advocate for staying the proceedings even after its APA appeal was dismissed -- which was a consequence of its own inaction -- and even after

26

that stay was, by all accounts, no longer relevant to its pursuit of judicial review. Once GABRI purported to renew its petition, it immediately sought to delay resolution of the litigation by seeking a stay, by demanding a jury trial, by complaining that it was facing too numerous motions from Trulieve, by claiming that it had a scheduling conflict, and then by asking that the case be reassigned to another judge.

Even after this Court announced that the APA did not provide a mechanism for judicial review of the hearing officer's decision -- leaving the certiorari proceedings as the only possible avenue of judicial review for Appellants -- there is no indication that either Appellant took steps to prepare to address the merits of their respective petitions. Indeed, neither Appellant sought out the relevant records to litigate the merits of the claims, but, instead, both parties dismissed their actions at the last possible minute.

Appellants' attack on the superior court's findings as "separate and distinct acts . . . distorts the findings of the trial court. The trial court did not consider each act in isolation, but instead considered them together." *Cohen*, 341 Ga. App. at 150 (2) (a). The superior court's order here, which broadly reviews conduct occurring over the span of several years, "sufficiently identifies the sanctionable conduct, and, having

reviewed the record in this case, we cannot say that the [superior] court abused its discretion in finding the identified conduct to be sanctionable." *Ernest v. Moffa*, 359 Ga. App. 678, 687 (5) (a) (859 SE2d 834) (2021).

3. The fact that the record supports the superior court's conclusion that Appellants engaged in sanctionable conduct does not end our inquiry. "[W]hen awarding fees under OCGA § 9-15-14, the court must limit the award to those fees incurred because of the sanctionable conduct." (Citation and punctuation omitted.) *Castillo v. Lopez*, 374 Ga. App. 794, 799 (3) (914 SE2d 344) (2025). "Lump sum or unapportioned attorney fees awards are not permitted in Georgia, and the trial court's order must show, on its face, the complex decision making process necessarily involved in reaching a particular dollar figure." *Ernest*, 359 Ga. App. at 687-688 (5) (b).

Here, the superior court ordered GABRI to pay $62,155 in attorney fees to Trulieve and ordered Aspire to pay $73,460. However, the order does not show how the superior court reached that amount or "show how it apportioned its award to fees generated based on sanctionable behavior." *Trotman v. Velociteach Project Mgmt.*, 311 Ga. App. 208, 214 (6) (715 SE2d 449) (2011). While the superior court received

28

extensive testimony and record evidence concerning the fees in this case -- and while the awards may be reasonable -- neither the order nor the transcript expressly reflects the complex decision making process necessary to support such an award. See *Huggins v. Chapin*, 233 Ga. App. 109 (503 SE2d 356) (1998). "We need such detail for proper review." *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (2) (d) (620 SE2d 463) (2005). Accordingly, the superior court's orders awarding attorney fees to Trulieve must be vacated and these cases remanded for further action consistent with this opinion.[13] Id.

*Judgments affirmed in part and vacated in part, and cases remanded. McFadden, P. J., and Hodges, J., concur.*

---

[13] On remand, the superior court may, in its sole discretion, conduct additional proceedings and receive additional evidence, if necessary, to accomplish our instructions on remand. See *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 243 (2) (d) (620 SE2d 463) (2005). Our holding renders moot Appellants' claims that the evidence was insufficient to support the fee award and that the fees were not reasonable and necessary.